386 A.2d 108
COMMONWEALTH of Pennsylvania
v.
**Alfred HARRIS, Appellant.**
Superior Court of Pennsylvania.
Submitted March 30, 1977.
Decided April 28, 1978.

Calvin S. Drayer, Jr., Assistant Public Defender, Norristown, for appellant.

Ross Weiss, First Assistant District Attorney, Elkins Park, and William T. Nicholas, District Attorney, Norristown, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This appeal is from judgments of sentence for robbery, burglary, and conspiracy. Appellant makes three arguments.

1

Appellant first argues that the lower court should have suppressed evidence obtained by New Jersey police after they stopped appellant in Cinnaminson Township, New Jersey.

On July 11, 1972, in the early afternoon, Officer David Duboraw was on a routine patrol when he saw, parked in a service station lot, a black and white Mercury Cougar with a green and white out-of-state license tag and a black man inside. Duboraw noticed this car because he remembered a bulletin issued for a car of its description on June 9, 1972, in connection with a robbery and shooting by two black men in the adjoining borough.

After circling the block, Duboraw saw that a Ford U-Haul van (or panel truck) had joined the Cougar, and that the driver of the Cougar was talking with two black men in the van. As Duboraw watched, the two vehicles drove out of the service station lot. Duboraw followed them to a liquor store, where the Cougar parked in a normal manner but the van parked in an unusual manner, pulling up with its front facing the doors of the store, and blocking the semi-circular drive. The three men went inside the store. Suspecting that a robbery might be in progress, Duboraw radioed for help. Two other police cars arrived, and took up positions from which they could observe the events. The three men emerged from the store with a six-pack of beer and a bottle of wine, and drove off. About a quarter-mile down the road both vehicles pulled into what the police described as a "jug handle" off the road. At that point the three police cars stopped them and asked the drivers for identification and vehicle registrations. One driver had no identification; the other had a license that was out of date. Appellant was the passenger in the van. Since the Cougar, the van and the police cars together were blocking traffic, the police asked the three men to accompany them to the police station a block away, to check out their licenses and identifications. The men drove to the station in their vehicles.

At the station, unknown to the three suspects, one officer went into the men's room and looked into the toilet tank, finding it normal. The three men were brought into the adjoining interrogation room, and shortly afterwards one of them asked to use the men's room. The officer listened outside the door; he heard no urinating or flushing, but did hear the sound of porcelain against porcelain. After the man came out, appellant also asked to use the men's room; the officer listened, with the same result. When appellant came out, the officer went in and looked into the toilet tank. Sure enough, in it he found credit cards and papers; some of them belonged to a person who, the police knew, had been robbed ten days earlier. A search warrant for the Cougar and the van was obtained, and evidence was found that linked appellant to an armed robbery in Pennsylvania; it is this evidence that appellant sought to have suppressed.[1]

Appellant argues that the police had no probable cause to arrest him, and that even assuming that the police could question the drivers as part of a valid, routine vehicle check, *State v. Kabayama*, 98 N.J.Super. 85, 236 A.2d 164 (1967), they still had no reason to detain or question him, a mere passenger in the van.

We agree that the police had no probable cause to *arrest* the three men, either for the robbery and shooting reported in the bulletin a month before, or for being about to commit a crime. However, the police were aware that one of the vehicles they were observing might have been involved in the robbery a month before, and they observed events at the liquor store suggestive of a possible casing-out for another robbery. These facts were enough reason to detain and question the occupants of the vehicles momentarily to determine if criminal activity was afoot. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1966), *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). It is true that *Terry* permits a brief, on-the-spot

1. Appellant's first trial, in March, 1974, ended in a hung jury. His second trial began on March 13, 1975.

check, and that here the suspects were questioned at the police station a block away. With traffic blocked, however, all parties could have seen that the police request to proceed to the station was reasonable. While we in no way decide the question of whether the suspects' consent to the police request would have been effective consent to an unlawful detention, where, as here, the detention was initially lawful, we think the consent was effective to permit the questioning away from the immediate scene. Accordingly, the evidence obtained as a result of the questioning was a lawful "fruit," and the lower court was correct in not suppressing it.

2

Appellant next argues that his trial counsel was ineffective for failing to object to the charge to the jury on appellant's use of an alias. The charge was:

There was evidence in this case tending to show that Mr. Harris made false statements to the police in New Jersey as to his name, when he was arrested in Cinnaminson Township. If you believe that evidence, you may consider it as tending to prove the defendant's conscious guilt. You are not required to do so. You should consider and weigh this evidence along with all of the other evidence in the case.

N.T. 3/19/75 at 505.

Appellant cites Pennsylvania authority to the effect that while concealment may be used as evidence of consciousness of guilt, it must first be proved that the suspect knew he was wanted for the crime. In the most quoted case on the subject, it is said:

When a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis in connection with other proof from which guilt may be inferred . . . .

*Commonwealth v. Coyle,* 415 Pa. 379, 393, 203 A.2d 782, 789 (1964).

If we were to apply this statement of the law literally, we should hold that the charge here was error, for it permitted

the jury to infer guilt simply from appellant's use of an alias; it did not instruct the jury that before guilt could be inferred there must be evidence, not only that appellant used an alias, but also that he knew he was wanted by the police.

It seems to us, however, that a statement such as the one in *Coyle* reflects an abundance of caution; if taken literally, it would require the Commonwealth to prove that the defendant had committed the crime in order to introduce at the trial for that crime evidence that the defendant had fled or concealed himself. Some subsequent cases have recited the requirement that the defendant know he is wanted for the crime, but have always found it met, for example by circumstantial evidence. *See, e. g., Commonwealth v. Tinsley,* 465 Pa. 329, 350 A.2d 791 (1976), *Commonwealth v. Osborne,* 433 Pa. 297, 249 A.2d 330 (1969). And in *Commonwealth v. Collins,* 440 Pa. 368, 269 A.2d 882 (1970), the Court makes no mention of the requirement. No case has actually held that for lack of proof that the defendant knew he was wanted, evidence of flight or concealment was inadmissible. We now hold that such a requirement is an unnecessary restriction on admissibility. As Dean Wigmore noted:

When Robinson Crusoe saw the human footprint on the sand, he could not argue inductively that the presence of another human being was absolutely proved. There was at least (for example) the hypothesis of his own somnambulism. Nevertheless, the fact of the footprint was for his conclusion evidence of an extraordinary degree of probability, *i. e.* it passed beyond the line of mere Admissibility.

The requirement or test, then, for this lower standard— Admissibility—would be something like this: Does the evidentiary fact point to the desired conclusion (not as the only rational hypothesis, but) as the hypothesis (or explanation) more plausible or more natural out of the various ones that are conceivable? Or (to state the requirement more weakly), *is the desired conclusion* (not, the most natural, but) *a natural or plausible one among the various conceivable ones?*

14

I *Wigmore on Evidence,* § 32 at 419 (3d Ed. 1940) (emphasis in original).

The conclusion that if a person gives the police an alias, he is trying to conceal evidence of guilt, satisfies this test of probability. No useful purpose is served by adding to the test the requirement that the suspect know he is wanted for the crime; it is eminently reasonable to assume that a person may use an alias from fear that he may be wanted for a crime long before he knows that in fact the police are on his trail. Thus, on the analogous subject of flight as evidence of consciousness of guilt, Wigmore says:

It is occasionally required by a Court that the accused should have been *aware* that he was charged or suspected. This is unnecessary; it is the act of departure that is itself evidential; ignorance of the charge is merely a circumstance that tends to explain away the guilty significance of the conduct.

II Wigmore, *supra,* § 276 at 116 (emphasis in original).

Indeed, a requirement that the defendant know he is wanted is less necessary with respect to evidence of the use of an alias than evidence of flight, for there would seem to be many more innocent explanations for a sudden change of location than there are for the use of an alias.

Accordingly, the charge to the jury that while they were not *required* to find consciousness of guilt, they could consider the alias *along with all the other evidence in the case,* adequately protected appellant. *Cf. Commonwealth v. Roscioli,* 454 Pa. 59, 66 n.6, 309 A.2d 396, 400 (1973) (presence at the scene of a crime and flight therefrom not alone sufficient to sustain a verdict of guilty). It remained open to appellant to argue to the jury, or to prove, that there was an innocent explanation for his use of the alias.

We recognize that under normal circumstances the fact that the issue of the alias comes to us via a claim of ineffectiveness of counsel would require us to remand this case for a hearing on whether counsel had a reasonable basis for not objecting to the jury instruction. *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977), *Commonwealth v.*

*Twiggs,* 460 Pa. 105, 331 A.2d 440 (1975). In other words: Since under *Commonwealth v. Coyle, supra,* the charge would appear to be error, why did not counsel object to the charge? However, if the trial judge had sustained such an objection, it would have been on the basis of what we have seen is a mistaken impression of the extent of the holding in *Coyle.* In these circumstances a remand would amount to holding that counsel could be found ineffective for failing to assert—possibly successfully—an erroneous, albeit plausible statement of the law.

Appellant finally argues that his trial counsel was ineffective in not preserving for appeal the issue of denial of a speedy trial.[2]

 The test for determining whether a defendant was denied a speedy trial involves balancing four factors: the length of the delay; the reason for the delay; the defendant's assertion of his right; and the prejudice resulting from the delay. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972). Here, appellant was arrested in New Jersey on July 11, 1972; the complaint for the Pennsylvania robbery was filed the next day; appellant waived extradition in July of 1973, was arraigned in Pennsylvania July 13, 1973, and trial began March 5, 1974. Appellant argues that because Pennsylvania made no move to extradite him for nearly a year, he was denied a speedy trial.[3] The Commonwealth responds that appellant was being held for trial in New Jersey, that the New Jersey authorities said he would not be made available until then, and that the trial was not over until December 18, 1972. In addition the Commonwealth says it moved to extradite appellant in June of 1973, but he was unavailable for about a month because of an injury he had received in prison.

**2.** Because the complaint was filed on July 12, 1972, Pa.R.Crim.P. 1100, requiring trial within a specified time, is not applicable.

**3.** In the lower court, appellant's counsel argued unlawful delay solely on the basis of the time appellant was in custody in New Jersey. On appeal, appellant argues that the issue should have been preserved— not that it was incorrectly framed.

■ Appellant argues that he asserted his right to a speedy trial on December 19, 1972, when after his New Jersey trial he asked a detective when he would be taken back to Pennsylvania, and again in January, 1973, when he inquired of a social services worker in the New Jersey prison about how to go about filing some motion for a speedy trial. No motion was ever filed, however. Appellant's assertion of his speedy trial rights was thus weak. Furthermore, the only valid prejudice appellant asserts is that the memories of his alibi witnesses would have become dim over time.[4] On these facts, we find that appellant's claim of denial of a speedy trial was not colorable, *Commonwealth v. Hubbard, supra,* and that trial counsel could reasonably have believed that pursuing it, after it had been once rejected, would have been fruitless, *Commonwealth v. Hill,* 231 Pa.Super. 371, 331 A.2d 777 (1974).

Affirmed.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

JACOBS, President Judge, concurs in the result.

---

4. Because he was incarcerated in New Jersey on charges there, appellant would not have been free to seek out and preserve potential witnesses in any event.