421 A.2d 199

**COMMONWEALTH of Pennsylvania,**

v.

**Alfred HARRIS, Appellant.**

Supreme Court of Pennsylvania.

Argued April 17, 1980.

Decided Sept. 22, 1980.

Arthur J. King, Asst. Public Defender, Chief, Appeals Division, Douglas M. Johnson, Asst. Public Defender, Montgomery Co., for appellant.

John T. Salvucci, Mary M. Killinger, Asst. Dist. Attys., Montgomery Co., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Alfred Harris, was convicted by a jury of robbery, burglary and conspiracy. Post–verdict motions were denied and appellant was sentenced to concurrent two–to–ten–year prison terms for the robbery and burglary convictions. Sentence was suspended for the conspiracy conviction. The Superior Court affirmed, *Commonwealth v. Harris*, 255 Pa.Super. 8, 386 A.2d 108 (1978), and we granted appellant's petition for allowance of appeal.

Appellant first argues that the suppression court erred in refusing to suppress certain physical evidence. The facts are as follows.

On July 11, 1972, while on routine patrol, Officer David Duboraw of the Cinnaminson Township, New Jersey, Police

Department noticed a black and white Mercury Cougar with green and white out–of–state license plates parked in a service station lot with a black male sitting inside the auto. Duboraw's interest was piqued because he remembered a month–old police bulletin describing a black and white Mercury Cougar with green and white out–of–state plates that had been used in a robbery and shooting by two black men in a neighboring community.

While observing the automobile, Duboraw saw a Ford van pull up alongside the Cougar. After the driver of the Cougar talked to two black men in the van, both vehicles were driven out of the service station lot. While Officer Duboraw was following both vehicles, the men pulled into the parking lot of a liquor store. The Cougar had been parked in a normal manner; the van, however, had been parked in such a way as to have blocked the semi–circular driveway. Suspecting that a robbery was in progress, Duboraw radioed for help. Shortly after two other police cars arrived, the three men came out of the liquor store with a six pack of beer and a bottle of liquor. The trio got into the two vehicles and drove off. The police followed both vehicles for approximately a quarter mile before pulling them over and asking both drivers for identification. Earl Golden, the driver of the Cougar, produced an expired Pennsylvania driver's license. Samuel Foster, the driver of the van, had no identification. Appellant was the passenger in the van. Although the record is far from clear, appellant apparently told the officers that his name was Rufus Outlands. As the Cougar, the van and the three police cars were blocking traffic, the police asked the threesome if they would accompany the officers to the police station a block away. Golden, Foster and appellant drove their own vehicles to the police station.

When everyone arrived at the police station, appellant and his cohorts were placed in an interrogation room, where, as one officer testified, "We could run a check on them, all three subjects." The same officer, on cross–examination testified:

"Q: When you took them to the police station, they were in fact confined there, is that correct?

"A: Well, they were brought into the room and sat down at the table.

"Q: They couldn't just walk out at that point?

"A: No, they could not.

"Q: You had them in custody?

"A: For investigation, yes. I would say they were in custody until we found out if they were clear or not as far as their driver's license was concerned. If they weren't, then subsequent motor vehicle summons' would have been issued."

Once inside the interrogation room, Foster asked if he could use the men's room. Unbeknownst to the three "suspects", Officer John Long, as a part of routine practice, had inspected the men's room, including the top of the toilet tank, before allowing Foster to use the men's room. When Foster entered the men's room, closing the door behind him, Officer Long remained at the door. Long testified that the only sound emanating from the men's room was the sound of porcelain scraping on porcelain. When Foster exited from the men's room, appellant asked if he could use the facilities. Again, Officer Long remained outside the door and heard the same sound of porcelain on porcelain. After appellant came out of the room, Long went in and removed the top of the toilet tank and found various papers and credit cards, including a credit card which Long recognized as belonging to an individual who had been the victim of a robbery ten days earlier. The police sought and obtained search warrants for both the Cougar and the van; while executing the warrants, police discovered, *inter alia*, evidence which linked appellant to the criminal episode in Pennsylvania which is the subject of the instant appeal.

■ Appellant argues now, as he did to the suppression court, that he had been arrested illegally when he was placed in the interrogation room of the police station. Believing that the arrest was illegal, appellant contends that

the evidence seized after arrest was the fruit of the illegal arrest, and hence should have been suppressed. We agree and reverse.[1]

■ One of the elemental protections our system provides is that which shields a citizen from arrest in the absence of a showing he or she has committed or is committing a crime. U.S.Const.Amend. IV; Pa.Const. art. I, § 8; *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *Commonwealth v. Jackson*, 459 Pa. 669, 331 A.2d 189 (1975).

■ As the instant encounter occurred in New Jersey, we must look to the law of that state to determine the validity of the police conduct here at issue. *U. S. v. DiRe*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948); *Commonwealth v. Johnson*, 198 Pa.Super. 51, 182 A.2d 541 (1962). New Jersey allows the police to arrest any person who violates the Motor Vehicle Code of the state. *State v. Roberson*, 156 N.J.Super. 551, 384 A.2d 195 (1978); *State v. Gray*, 59 N.J. 563, 285 A.2d 1 (1971). As the New Jersey legislature has provided:

"Any ... police officer ... may, without a warrant, arrest any person violating in his presence any provision of chapter three of this title...." N.J.S.A. § 39:5-25.

Further:

"The driver's license, the registration certificate of a motor vehicle ... shall be in the possession of the driver or operator at all times when he is in charge of a motor vehicle on the highways of this state...." N.J.S.A. § 39:3-29.

■ It is undisputed, however, that appellant was not the driver of either of the vehicles involved in the instant encounter. Thus, as to appellant, the above-cited New Jersey statutes provide no justification for arrest.

The Superior Court, however, determined the police conduct in the instant case was justifiable under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1966). We have interpreted *Terry* to permit a police officer to "legitimately

1. Our review of the record convinces us appellant's other assignments of error, i. e. that he was denied his constitutional rights to speedy trial and effective assistance of counsel, are without merit.

seize a person ... and conduct a limited search of the individual's outer clothing in an attempt to discover the presence of weapons which might be used to endanger the safety of the police officer and others, if the police officer observes unusual and suspicious conduct on the part of the individual seized which leads him reasonably to conclude that criminal activity may be afoot and that the person with whom he is dealing may be armed and dangerous." *Commonwealth v. Hicks*, 434 Pa. 153, 158–159, 253 A.2d 276, 279 (1969).

Certainly on the facts of this case a *Terry* argument could be made. But we are bound by the record, and the record in the instant case discloses that the arresting officers testified appellant and his companions were told to accompany them to the police station to check on their driver's licenses and vehicle registrations. Thus what began as a routine "motor vehicle check" at no time acquired additional justification until the incriminating evidence was discovered.

Thus neither *Terry* nor the New Jersey statute adequately supports appellant's arrest.

"Evidence obtained following an illegal arrest must be suppressed unless the Commonwealth can establish that the evidence is sufficiently purged of any taint from the illegal arrest." *Commonwealth v. Farley*, 468 Pa. 487, 364 A.2d 299 (1976); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

Instantly the Commonwealth does not attempt to purge the seized evidence of the taint of the illegal arrest; rather the Commonwealth argues the initial stop was justifiable and the arrest legal. Whatever value this argument may have as to appellant's two companions, the Commonwealth does not articulate how its argument, in light of the record before us, validates the arrest of appellant, who was driving neither vehicle. We hold that on this record appellant's arrest was illegal.

It is true, as the dissenters have stated, that the evidence instantly at issue was not directly seized by the police. It may be argued the evidence was abandoned.

We have long held that "[a]lthough abandoned property may normally be obtained and used for evidentiary purpose by the police, such property may not be utilized where the abandonment is coerced by unlawful police action." *Commonwealth v. Pollard*, 450 Pa. 138, 299 A.2d 233 (1973).

In *Commonwealth v. Jeffries*, 454 Pa. 320, 311 A.2d 914 (1973), we analyzed on "abandonment" and determined that the officer's "unlawful and coercive conduct" in chasing appellant was the "causative factor which motivated appellant's abandonment." We reached the same result in *Commonwealth v. Barnett*, 484 Pa. 211, 398 A.2d 1019 (1979) under similar facts. In both *Jeffries* and *Barnett* we held the abandoned property was inadmissible evidence.

█ So too here, where the coercive police conduct was the illegal arrest, we cannot find appellant's abandonment of the property was an intervening, independent act of a free will.

Judgments of sentence reversed. The record is remanded for new trial.

LARSEN, J., files a dissenting opinion which FLAHERTY and KAUFFMAN, JJ., join.

LARSEN, Justice, dissenting.

I dissent.

The majority implies that the resolution of this case turns upon the timing and legality of appellant's arrest. I am persuaded, however, that the circumstances of appellant's arrest are irrelevant to a determination of the suppression issue.

Even if appellant were illegally arrested, the evidence subsequently recovered from the police station toilet tank would not have been the fruit of that illegal arrest. "The general rule is that evidence obtained through a prior illegality is inadmissible against a criminal defendant." *Commonwealth v. Romberger*, 474 Pa. 190, 197, 378 A.2d 283, 286 (1977). This Court has recognized, however, that "an illegal arrest does not necessarily taint all evidence that follows in time." *Commonwealth v. Richards*, 458 Pa. 455, 464, 327 A.2d 63, 67 (1974). Relying on *Wong Sun v. United States*,

371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), this Court has noted that

the challenged evidence may be purged of the primary taint only (1) if it results from " 'an intervening, independent act of a free will,' " or (2) if the connection between the arrest and the evidence . . . has " 'become so attenuated as to dissipate the taint.' " (Citations omitted.)

*Betrand Appeal*, 451 Pa. 381, 388–89, 303 A.2d 486, 490 (1973).

Applying these rules to the facts of the instant case, it is readily apparent that the recovery of the items from the toilet tank was the result of an intervening independent act of free will on the part of appellant, and not the result of an exploitation of the illegal arrest on the part of the police. These items were discovered only after appellant voluntarily sought permission to enter the restroom, voluntarily removed the items from his person, and voluntarily placed them into the tank. At no time prior to the discovery of these items did the police coerce, intimidate, search or physically restrain appellant, nor did they make any inquiry into the circumstances of the robbery during which the items had been taken. Once appellant voluntarily placed the items into the tank, those items were purged of the primary taint of any unlawful arrest.

Alternatively, if appellant were not unlawfully arrested prior to the recovery of the evidence from the toilet tank, he would still have suffered no violation of rights under the Fourth Amendment. The Fourth Amendment protects individuals from unreasonable governmental invasions of legitimate expectations of privacy. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978). The legitimacy of any expectation of privacy must be determined with reference to the law of property or to "understandings that are recognized and permitted by society," and not by resort to any subjective standard. *Id.*, at 430–31 n.12. An individual may forfeit a legitimate expectation of privacy, and thus the protection of the Fourth Amendment, by conduct or presence in a particular place, under such conditions that society would cease to recognize the continued legitimacy of

that expectation. *See, Commonwealth v. Timko*, 491 Pa. 32, 417 A.2d 620 (Larsen, J., dissenting, 1980.) While an individual may have a legitimate expectation of privacy with regard to property kept on his person, a defendant can scarcely claim to have any expectation of privacy with respect to evidence that he voluntarily removes from his person and attempts to conceal inside a police station. In the present case, appellant had no grounds for complaint when the police found the items he had placed in the tank because he had lost the protection of the Fourth Amendment with respect to those items when he voluntarily placed them there.

Finally, that evidence retrieved from the van and the Cougar, pursuant to the warrant obtained after the evidence was found in the toilet tank, was also admissible against appellant because it was the fruit of the lawful discovery of other evidence–the items in the tank–and was in no way tainted by any unlawful arrest or illegal search and seizure. The suppression court was thus correct in refusing to suppress any of the evidence admitted at appellant's trial. Accordingly, I would affirm the order of the Superior Court.

FLAHERTY and KAUFFMAN, JJ., join in this dissenting opinion.