476 A.2d 403

COMMONWEALTH of Pennsylvania

v.

**Thomas Gregory VECCHIONE, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 7, 1983.

Filed April 13, 1984.

Reargument Denied June 25, 1984.

Petition for Allowance of Appeal Denied Oct. 30, 1984.

---

552

Alan Ellis, Philadelphia, for appellant.

Joseph H. Kleinfelter, Deputy District Attorney, Harrisburg, for Commonwealth, appellee.

Before McEWEN, JOHNSON and POPOVICH, JJ.

JOHNSON, Judge:

This is an appeal from judgment of sentence imposed upon appellant, Thomas G. Vecchione, for being convicted of possession of controlled substances with the intent to deliver.[1] After timely post-trial motions were filed and denied, appellant was sentenced to ten (10) to twenty-three (23) months in Dauphin County Prison, to pay a fine of $10,000 and to pay the costs of prosecution. This appeal was taken.

The incident that is the subject of this appeal began on January 7, 1981 when appellant's flight to Philadelphia from State College, Pennsylvania landed for an interim stopover in Harrisburg, Pennsylvania. The pilot made an announcement over the internal intercom of the plane that passengers proceeding to Philadelphia had to disembark with their hand-carried articles and undergo security screening since proper screening procedures were not available in State College. While handing the passengers their hand-

1. 35 P.S. § 780–113(a)(30).

carried articles, the pilot twice refused appellant permission to leave his suitcase on the plane. As the pilot lead the passengers to the screening area, he noticed appellant walk in a direction away from the screening area. After gaining appellant's attention and learning that appellant wished to place a phone call, the pilot stated that appellant would first have to go through security screening. Appellant then went to the security screening area. He placed his suitcase on the x-ray machine for viewing. The x-ray technician, Susan Stilo, observed an unidentifable mass in appellant's suitcase. She asked appellant if she could open the suitcase. He refused her permission. Then he grabbed his suitcase and exited the screening area walking briskly.

The police officer on duty at the screening area, Officer David Trott, shouted to appellant to stop; whereupon appellant ran. Other airport police officers pursued appellant on foot outside the terminal. After momentarily being lost from sight, appellant reappeared, walking toward the officers without the suitcase. During a search of the area, the suitcase was found on an embankment near some railroad tracks. Also, a ticket bearing the name "J. Williams" was found on the railroad tracks. Both objects were retrieved and returned to the terminal security office, where appellant had been taken by another officer.

Subsequently, the suitcase was re-examined by x-ray by Officer Trott and other members of the airport police. Members of the Army Explosive Ordinance Disposal detail at Fort Indiantown Gap were summoned and a search warrant was secured by Officer Trott. The suitcase was opened mechanically away from the terminal by the army explosives experts. The suitcase did not contain a bomb, but it did contain one and one-half pounds of marijuana and $20,990.40 in cash. Prior to trial, appellant moved to suppress the marijuana and cash. The suppression court held that appellant voluntarily submitted his suitcase to the search, that the warrant secured was based on adequate facts to support a finding of probable cause, and that the

search warrant was surplusage because a warrantless search was permissible since the bag was abandoned.

On appeal, appellant asserts that his rights to a speedy trial were violated and that the trial court erred in denying his motion to suppress the marijuana and cash seized. We affirm.

■ The initial issue confronting us is whether appellant should be ordered discharged because his right to speedy trial, pursuant to Pa.R.Crim.P. 1100 was allegedly violated. We do not reach this issue, however, because the claim is not properly preserved for our review.

Section (f) of Rule 1100 states that:

[a]t any time before trial, the defendant or his attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated. A copy of such motion shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon. Any order granting such application shall dismiss the charges with prejudice and discharge the defendant.

Pa.R.Crim.P. 1100(f), 42 Pa.C.S.A. In *Commonwealth v. Davis*, 261 Pa.Super. 204, 395 A.2d 1388 (1978), we interpreted this provision of Rule 1100 and said in pertinent part the following:

To establish a Rule 1100 claim, the defendant is obliged to have the lower court rule on its merits prior to trial. Thus, he must ... file a motion under Rule 1100(f) ... so that ... the facts and issues come before the court. Otherwise, his Rule 1100 claim will be waived....

*Id.*, 261 Pa.Superior Ct. at 208, 395 A.2d at 1389–90 (citations omitted); *accord Commonwealth v. Singleton*, 313 Pa.Super. 224, 459 A.2d 821 (1983); *Commonwealth v. McFadden*, 300 Pa.Super. 299, 446 A.2d 624 (1982). However, since it is the court, not the clerk of court's office which must act on the motion to dismiss, the question of filing should be decided on whether or not the motion is properly before the lower court prior to trial not whether or

not the motion is docketed in the clerk of court's office prior to trial. *See Commonwealth v. Wharton*, 250 Pa.Super. 25, 378 A.2d 434 (1977).

■ In the instant case, the record certified from the trial court does not contain any motion for dismissal under Rule 1100(f). A review of the certified docket entries does not disclose the filing of such motion. In fact, the only references to such motion occurred immediately before trial when the following occurred:

MR. FOGELNEST [Appellant's Counsel]: ..., just for the purpose of preserving the record, I have given Mr. Kleinfelter the copy of a motion to dismiss pursuant to Rule 1100. We waive argument on it.

THE COURT: Did Judge Morgan consider that?

MR. KLEINFELTER [Deputy District Attorney]: No. Your Honor. This is the first time that matter has been raised.

The rule did run on July 6, 1981; however, it is the Commonwealth's position that on each and every appearance before that date and subsequent thereto, the defendant appeared with his counsel, entered a knowing, intelligent, and voluntary waiver of the rule through this date.

MR. FOGELNEST: I have no argument to make to the Court, but because of the Appellate Court's being the way they are, I would like to make sure that I filed it, Judge.

THE COURT: Surely.

MR. KLEINFELTER: You are waiving the hearing on that?

MR. FOGELNEST: At this point, sure.

N.T., Transcript of Proceedings, December 17, 1981 at 3–4. We have found no other reference to a motion. More importantly, we have not found any order denying the motion or any other proceeding in which the motion was considered, other than during consideration of post-trial motions.

While, as indicated by the passage quoted above, appellant's counsel displayed concern for preserving a Rule 1100 claim, we do not believe that he has succeeded in doing so. We note initially that the passage quoted above reveals only the statement of appellant's counsel that a copy of a Rule 1100 motion was given to the deputy district attorney, not that appellant's counsel preserved the Rule 1100 claim by applying to the trial judge for dismissal of appellant's charges. *See Commonwealth v. Davis, supra.* If one is to conclude that a motion to dismiss was brought before the trial judge, it must be implied from appellant's counsel's oral statements or it must be inferred from counsel's use of the word "copy" that the original written motion was given to the trial judge. If indeed a motion was made below, either orally or by presentation of the original unfiled written motion, we conclude that under either alternative appellant's Rule 1100 claim is not properly before us.

In *Commonwealth v. Drake,* 489 Pa. 541, 414 A.2d 1023 (1980), our Supreme Court held that an oral motion to dismiss was insufficient to preserve a Rule 1100 claim for review. In interpreting Rule 1100(f) to require a written application for dismissal, the court concluded that this interpretation would provide the trial courts "with specific facts and issues for determination" and provide "certainty in the record on appeal...." *Id.,* 489 Pa. at 544, 414 A.2d at 1024; *accord Commonwealth v. Hall,* 267 Pa.Super. 204, 406 A.2d 765 (1979). Accordingly, if appellant's motion to dismiss is viewed as having been derived from his counsel's oral statements, it would clearly be insufficient under *Drake.*

 If appellant's counsel presented the court with an unfiled written motion to dismiss, in light of *Commonwealth v. Wharton, supra,* it is unclear whether this procedure is sufficient to preserve his claim. However, even if we assume *arguendo* that this procedure is sufficient to bring the motion before the trial court, appellant's counsel declined to argue his motion indicating that he just wanted to file the motion, and he did not press the motion until a

ruling was made by the trial court. Absent a ruling by the trial court, appellant cannot assert that the trial court committed error in not discharging him pursuant to Rule 1100. *Cf.* 9 Standard Pa.Practice 2d § 56:8 (1982); 75 Am.Jur.2d Trials §§ 173, 176. Since the rules of Criminal Procedure provide that all pretrial motions must be determined prior to trial, Pa.R.Crim.P. 310, and Section (f) of Rule 1100 specifically limits appellant's ability to raise a speedy trial claim to "any time before trial," we therefore conclude that appellant's failure to have the trial court rule on the merits of his Rule 1100 claim prior to trial results in a waiver of his claim. *Cf. Commonwealth v. Davis, supra;* 60 C.J.S. Motions & Orders § 42 (where no ruling appears to have been made on a motion the presumption is, unless it otherwise appears, that the motion was waived or abandoned).

We therefore find that appellant has not properly preserved his Rule 1100 claim for our consideration.

■ Although appellant has challenged the legality of the search warrant pursuant to which the suitcase was opened and searched, for reasons set forth *infra,* we hold that the suitcase was abandoned by appellant and consequently the search was permissible irrespective of the validity of the search warrant.

■ It is hornbook law that abandoned property may be obtained and used for evidentiary purposes without regard to the existence of probable cause or a search warrant. *Commonwealth v. Williams,* 269 Pa.Super. 544, 410 A.2d 835 (1979). The theory of abandonment is predicated upon the clear intent of an individual to relinquish control of the property he possessed. *Commonwealth v. Shoatz,* 469 Pa. 545, 366 A.2d 1216 (1976). Personal belongings, such as appellant's suitcase, "retain their constitutional protection until their owner meaningfully abdicates control or responsibility." *Commonwealth v. Platou,* 455 Pa. 258, 312 A.2d 29 (1973) *cert. denied* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). The issue is not abandonment in the

strict property right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. *Commonwealth v. Shoatz, supra,* 469 Pa. at 553, 366 A.2d at 1220 *citing U.S. v. Colbert,* 474 F.2d 174, 176 (5th Cir.1973). Although abandoned property is admissible evidence, such property may not be utilized where the abandonment is coerced by unlawful police action. *Commonwealth v. Harris,* 491 Pa. 402, 421 A.2d 199 (1980); *Commonwealth v. Jeffries,* 454 Pa. 320, 311 A.2d 914 (1973); *Commonwealth v. Pollard,* 450 Pa. 138, 299 A.2d 233 (1973).

Appellant does not challenge the lower court's finding that in leaving his suitcase in the snow on an embankment outside of the airport grounds appellant discarded it in a manner that indicates abandonment. Rather, appellant argues that the initial x-ray of the contents of the suitcase was illegal and that the illegal search ultimately resulted in the abandonment. We must therefore determine whether the initial x-ray search was legal and, if not, whether it was a "causative factor" motivating the abandonment. *See Commonwealth v. Jeffries, supra; Commonwealth v. Pollard, supra.*

Initially, we note our concurrence with appellant's conclusion that the x-ray viewing of the contents of carry-on luggage is indeed an intrusion governed by the Fourth Amendment. There exists a reasonable expectation of privacy as to the contents of carry-on luggage. *U.S. v. Davis,* 482 F.2d 893 (9th Cir.1973). The viewing of the carry-on luggage constituted a warrantless search within the meaning of the Fourth Amendment. *U.S. v. Haynie,* 637 F.2d 227, 230 (4th Cir.1980). Moreover, searches conducted by airport security personnel are not private searches but governmental searches. *U.S. v. Davis, supra.* As to the Constitutionality of this search, there have been no less than four separate constitutional justifications ad

vanced by the federal circuit courts and the state courts that have considered the problem. *See* Weinstock, The Airport Search and the Fourth Amendment: Reconciling Theories and Practices, 7 UCLA-Alaska L.Rev. 307 (1978).[2] While none of the approaches provide an ideal means for squaring the airport security screening procedures with the dictates of the Fourth Amendment, we believe these procedures are an administrative search initiated with the consent of the passenger.

 Nondiscriminatory searches of passengers and their carry-on luggage is mandated by the Air Transportation Security Act of 1974, 49 U.S.C. §§ 1356, 1511[3] and the

2. Briefly stated, the four approaches that have been utilized are: (1) analogy to border searches; (2) the administrative search; (3) the administrative search predicated on consent approach; and (4) the approach based on *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

3. In pertinent part, Section 1356 states the following:
§ 1356. **Screening procedures for passengers; promulgation and amendment of regulations by Administrators; reports to Congress; exempted air transportation operations**
(a) The Administrator shall prescribe or continue in effect reasonable regulations requiring that all passengers and all property intended to be carried in the aircraft cabin in air transportation or intrastate air transportation be screened by weapon-detecting procedures or facilities employed or operated by employees or agents of the air carrier, intrastate air carrier, or foreign air carrier prior to boarding the aircraft for such transportation.

. . . . .

*see also* 49 U.S.C. § 1357. Section 1511 states in relevant part:
§ 1511. **Authority to refuse transportation; grounds; agreements for carriage of persons or property deemed to include agreements to refuse carriage upon refusal of consent to search**
(a) The Administrator [Secretary of Transportation] shall, by regulation, require any air carrier, intrastate air carrier, or foreign air carrier to refuse to transport—
(1) any person who does not consent to a search of his person, as prescribed in section 315(a) of this Act [49 USCS § 1356(a)], to determine whether he is unlawfully carrying a dangerous weapon, explosive, or other destructive substance, or
(2) any property of any person who does not consent to a search or inspection of such property to determine whether it unlawfully contains a dangerous weapon, explosive, or other destructive substance.

. . . . .

regulations promulgated pursuant to the Act, 14 C.F.R. parts 108 and 121. The regulations provide that all passengers and carry-on articles must be inspected prior to being allowed on board the aircraft. When a passenger refuses his consent to inspection the airlines must refuse passage to the passenger. *Id.* § 108.9(b)(1) and (2). Thus the regulatory scheme statutorily conditions the right to passage on an airplane upon "consent" of the passenger to the search of his person and the possessions to be carried aboard the plane.

Although the statutory provisions and regulations do not directly authorize the warrantless search of airport passengers, we nevertheless must conclude that the requirements of search implicit in the statute provisions and regulations must comport with the reasonableness requirement of the Fourth Amendment. As we stated in *Commonwealth v. Lapia & Dugger*, 311 Pa.Super. 264, 457 A.2d 877 (1983): "The Fourth Amendment of the United States Constitution, as is also so of Article I, Section 8 of the Pennsylvania Constitution, prohibits only 'unreasonable searches and seizures.'" We further stated in *Lapia*, that "there is no test of reasonableness 'capable of precise definition or mechanical application' .... [r]ather determining reasonableness involves balancing the intrusion on the individual's Fourth Amendment rights against the government's need to conduct the intrusion." *Id.*, 311 Pa.Superior Ct. at 303, 457 A.2d at 897 (citations omitted).

The reasonableness of the screening search requirement is readily apparent when the need to search is balanced against the intrusion which the search entails. It is, by now, axiomatic that the frequency, dangers, and consequences of highjacking provide a compelling justification for conducting nondiscriminatory screening of passengers. The "preservation of hundreds of lives and millions of dollars worth of private property" is properly a paramount consideration in favor of a search procedure. *People v. Hyde*, 12 Cal.3d 158, 115 Cal.Rptr. 358, 524 P.2d 830 (1974). We note further that there is not an acceptable way of

identifying prospective highjackers from the ordinary air traveler. In weighing the needs for the search against its intrusiveness, it is important to consider that such airport screening searches are now commonplace, and indeed often are perceived by passengers as an indication of safety in air travel. *U.S. v. Edwards*, 498 F.2d 496, 500 (2nd Cir.1974). Because these types of searches are commonplace and are not selective, there is no social stigma attached to them. *People v. Hyde, supra*, at 177, 115 Cal.Rptr. at 371, 524 P.2d at 843.

The search contemplated by the regulations is one that is carefully circumscribed, in purpose and intrusiveness, in accordance with the need for the search, i.e., to prevent and deter the carriage aboard airplanes of weapons and explosives. An x-ray scan, as was done in this case, is certainly the least intrusive method of examining the contents hand-luggage. As a prelude to a hand search, it permits a great majority of the passengers to be screened with minimal bother, and eliminates the necessity for a more intrusive hand search. This screening procedure achieves an acceptible degree of safety in airflights and no other has been suggested that is less intrusive which achieves the same or greater results. Moreover, the purpose of the search is not to gather evidence for a criminal investigation, but it is conducted as part of a general regulatory scheme in furtherance of an administrative purpose.

Hence, we conclude that the search contemplated by the regulations comports with the Fourth Amendment requirement of reasonableness.

Consistent with the federal regulations that require the search of all passengers and carry-on luggage, many courts have analyzed airport screening situations under the rubric of consent. We recognize that the conditioning of the right to board the plane upon consent to search prevents the consent to search from being the product of a completely "free and unconstrained choice by the maker." However, voluntariness of the consent has to reflect an accommodation of the values implicated by the situation. *See Schneck-*

*loth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Here we have found the predication of the right to air passage upon a search to be reasonable, notwithstanding the fact that it limits a prospective passenger's prerogatives. As was stated in *United States v. Davis*, 482 F.2d 893, 913 (9th Cir.1973):

[a] prospective passenger has a choice: he may submit to a search of his person and immediate possessions as a condition to boarding; or he may turn around and leave. If he chooses to proceed, that choice, whether viewed as a relinquishment of an option to leave or an election to submit to the search, is essentially a "consent," granting the government a license to do what it would otherwise be barred from doing by the Fourth Amendment.

*Accord United States v. Henry*, 615 F.2d 1223 (9th Cir. 1980); *United States v. Haynie*, 637 F.2d 227 (4th Cir.1980); *United States v. DeAngelo*, 584 F.2d 46 (4th Cir.1978); *United States v. Miner*, 484 F.2d 1075 (9th Cir.1973); *State v. Miller*, 110 Ariz. 491, 520 P.2d 1115 (1974).

In the instant case, appellant argues that the initial x-ray search of his carry-on luggage is not supported by his consent. In particular, appellant argues that his consent was involuntary because he was not made aware of his right to refuse the search. We find appellant's argument to be devoid of merit.

The voluntariness of consent is to be determined by considering the surrounding facts and circumstances of each case. *Commonwealth v. Lapia & Dugger, supra*, 311 Pa.Superior Ct. at 294, 457 A.2d at 892. Refering to *Schneckloth v. Bustamonte, supra*, this court reiterated in *Lapia* that "proof of knowledge of the right to refuse to consent is not a "necessary prerequisite" to demonstrating that consent to search was voluntary. *Id.*, 311 Pa.Superior Ct. at 298, 457 A.2d at 894 (citations omitted). The suppression court concluded that appellant:

voluntarily submitted the bag to x-ray examination. He was informed that the examination was required if he wished to continue on the flight to Philadelphia and at

this point he could have walked out of the airport. Prominently posted notice [4] was given that he had a right to refuse to x-ray inspection, yet he placed the bag on the conveyer belt and it went through the machine....

Slip op. of Suppression Court at 3. Our examination of the notes of testimony convinces us that these findings are adequately supported by evidence. In accordance with our scope of review in matters of suppression, we are bound by the findings of the suppression court in the instant case since they are adequately supported by the record. *Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980).

Finding the initial x-ray search to have been valid,[5] we need not determine whether it was a causative factor in the abandonment.

Judgment of sentence is affirmed.

POPOVICH, J., filed a concurring statement.

POPOVICH, Judge, concurring:

Although I concur in the result reached by the majority, I cannot subscribe to the views expressed therein concerning what constitutes a proper and effective filing of a motion for dismissal under Pa.R.Crim.P. 1100. In my view, there are inconsistencies in the Rules of Criminal Procedure which need to be clarified in regard to the proper and effective filing of such a motion. *See, e.g.,* Pa.R.Crim.P. 9022 commentary ("those rules that provide for filing with the trial court (*see, e.g.,* Pa.R.Crim.P. 321) or the sentencing court (*see, e.g.,* Pa.R.Crim.P. 1410) are not exceptions to the general requirement of this rule that filing be with the clerk of court) and Pa.R.Crim.P. 1100(f) ("At any time before

---

**4.** The sign stated that: "[i]nspection of all persons and hand-carried articles entering a security checkpoint is required...." and that "[c]arry-on baggage may be inspected by x-ray." It also stated that "[i]nspection may be refused. Persons refusing inspection may not proceed beyond this screening point."

**5.** We do not address whether consent to x-ray viewing of carry-on luggage may be used to justify a later compelled hand search of carry-on luggage, as the search in the instant case was conducted after the abandonment of appellant's suitcase.

564

trial, the defendant or his attorney may apply *to the court* ....). (Emphasis added).