580 A.2d 1110

**COMMONWEALTH of Pennsylvania**

v.

**Debra Irene GUMBY, Appellant.**

Superior Court of Pennsylvania.

Submitted June 4, 1990.

Filed Sept. 12, 1990.

Gary S. Fronheiser, Boyertown, for appellant.

Mark C. Baldwin, Asst. Dist. Atty., Reading, for Com.

Before WIEAND, MONTGOMERY and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from the judgment of sentence entered following appellant's convictions for bringing contraband[1] into prison and possession of marijuana, a Schedule I Controlled Substance.[2] Appellant presents the following issues for review: (1) whether the trial court erred in denying appellant's motion to suppress evidence; and (2) whether the trial court erred in failing to declare a mistrial after one

---

1. 18 Pa.C.S.A. § 5123(a).
2. 35 P.S. § 780–113(a)(31).

of the Commonwealth witnesses referred to appellant's exercise of her right to remain silent. For the reasons set forth below, we affirm the judgment of sentence.

The relevant facts are as follows. On February 25, 1988, appellant, Debra Gumby, went to the Berks County Prison for the purpose of visiting one of the inmates who was lodged therein, Sammie Williams. Prior to her arrival, Sergeant Herberto Colon, an Assistant Shift Commander at the prison, had received information from a confidential informant relating to Williams.[3] The informant stated that Williams was receiving narcotics through his visitors, but was unable to further identify the visitor. *See* Suppression Hearing Transcript, 6/9/88, at pp. 5–6. Upon learning of this information, Colon informed Lieutenant Charles Eckenroth, who was in charge of the Visitors Area at the prison. When appellant arrived at the prison, Eckenroth was notified and he summoned a prison matron to conduct a strip search. Appellant refused to consent to the search, and was informed that she would be escorted off of the prison grounds by the police.[4] After being informed of these consequences, appellant decided to consent to the search. Accordingly, appellant was escorted into the ladies' room by the matron. While in the restroom, appellant removed a balloon that was concealed on her person and attempted to flush it down the toilet. In an attempt to prevent the destruction of the contraband, the prison matron and appellant scuffled briefly. Upon hearing the struggle, Eckenroth entered the restroom and successfully retrieved the balloon before it was carried into the sanitation system. The contents of the balloon were later analyzed and found

**3.** The confidential informant was also an inmate at the prison. Sergeant Colon testified that he had known the informant for approximately eight years and that the informant had supplied reliable information in the past. *See* Suppression Hearing Transcript, 6/9/88, at pp. 5 and 11.

**4.** The purpose of the police escort was not to arrest appellant; rather, Eckenroth testified that it was the prison's policy to escort visitors suspected of carrying contraband out of the prison so that the contraband could not be discarded upon the prison grounds where it could be subsequently retrieved by the prisoners. *See* Suppression Hearing Transcript, 6/9/88, at pp. 26–27.

to contain marijuana. As a result, appellant was convicted of the above charges in a jury trial held in October, 1988. Post-trial motions were thereafter filed and denied, and appellant was sentenced on November 21, 1988. In addition, appellant filed a motion for modification/reconsideration of her sentence, which was subsequently denied because of her pending appeal with this court. This timely appeal followed.

Appellant first contends that the trial court erred in denying her motion to suppress the contraband. When reviewing a suppression ruling:

> we must determine whether the factual findings are supported by the record. When it is a defendant who has appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error....

*Commonwealth v. Parsons*, 391 Pa.Super. 273, 277, 570 A.2d 1328, 1330–1331 (1990) (citations omitted). We will review appellant's arguments with this standard in mind.

In support of her argument, appellant first avers that the authorities lacked the reasonable suspicion to conduct a search because she was not specifically identified by the confidential informant. Further, appellant contends that she did not consent to the search because her consent was coerced. Finally, appellant alleges that the evidence should have been suppressed because her brief detention at the prison constituted an illegal arrest. We find these arguments to be without merit.

■ 61 P.S. § 384 expressly authorizes prison officials to search any person or visitor coming to the prison who is suspected of carrying any type of narcotic. In interpreting this statute, this court has found the following elements to be necessary:

first, that the person must be "reasonably suspected" of having narcotics; second, that after being informed that before he may make his visit he must submit to a search, the person must consent to be searched; and third, that the search that the warden then conducts must be a reasonable search.

*Commonwealth v. Dugger,* 311 Pa.Super. 264, 302–303, 457 A.2d 877, 897 (1983), *reversed* on other grounds, *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985) (the Supreme Court expressly affirmed this court's interpretation of the statute and adopted the "reasonable suspicion" standard for evaluating a prison search. *See Dugger,* 506 Pa. at 541, 486 A.2d at 384.).

Although appellant correctly refers to the reasonable suspicion standard, she contends that this standard requires the search be directed towards a particular individual. Accordingly, appellant reasons that the prison officials had no authority to conduct a search of her person because the informant did not identify her by name. Contrary to appellant's interpretation, prison officials are expressly authorized to search all visitors to the prison. *See* 37 Pa.Code § 93.3(i)(2). Moreover, the standard set forth above does not mandate that the visitor be identified by name; all that is required is *reasonable* suspicion. As a result, our Supreme Court has recognized that more leeway is allowed in permitting searches than might ordinarily be found in a non-penal environment, because a prison setting involves unique concerns and security risks. *See Dugger,* 506 Pa. at 542, 486 A.2d at 384. In addition, the information supplied to the authorities in this case was certainly adequate to support the finding of reasonable suspicion. Sergeant Colon testified that he had personally known the confidential informant for over eight years and that the informant had supplied reliable information in the past. *See* Suppression Hearing Transcript, 6/9/88, at pp. 5 and 11. While it is true that the informant did not particularly identify appellant, he did inform Sergeant Colon that Williams was receiving narcotics through his visitors. *See id.* at pp. 5–6.

160

Further, Colon testified that he had personally observed Williams and had suspected that he was "high". *See id.* at pp. 9–10 and 13. Accordingly, we find that this evidence refutes appellant's contention that reasonable suspicion to search her did not exist.

 Appellant next asserts that her consent to the search was coerced. In evaluating the voluntariness of a defendant's consent, this court has previously observed that " '[t]he issue of whether consent has been voluntarily given is a question of fact which must be determined in each case from the totality of the circumstances.' ..." *Commonwealth v. Mancini*, 340 Pa.Super. 592, 603, 490 A.2d 1377, 1383 (1985), quoting *Commonwealth v. Walsh*, 314 Pa.Super. 65, 74, 460 A.2d 767, 771 (1983). In addition, we have observed that

> [c]onsent must at least be freely given to be effective. This means there must be a total absence of duress or coercion, express or implied.... Further, it is well established that the consent may not be gained through stealth, deceit or misrepresentation, and that if such exists this is tantamount to implied coercion.

*Commonwealth v. Walsh, supra,* 314 Pa. at 75, 460 A.2d at 771–772 (citations omitted). With these principles in mind, we review the totality of the circumstances surrounding appellant's consent.

The record demonstrates that appellant was informed by either Lieutenant Eckenroth or the prison matron of the reason for the search. *See* Suppression Hearing Transcript, 6/9/88, at pp. 20, 26 and 33. Further, appellant was told of the consequences of her refusal to be searched, *see id.* at p. 27, and that she would be free to leave if she did not consent to the search. *See id.* at p. 33. Finally, we note that *before* the search began, appellant removed the marijuana from her brassiere and attempted to dispose of it by flushing it down the toilet.

Appellant does not dispute that the above facts, standing alone, are sufficient to support a finding of consent; rather,

she argues that her consent was coerced because she was not permitted to immediately leave the prison after she initially refused to consent. With respect to this argument, this court has noted that "the fact of custody alone has never been enough in itself to demonstrate a coerced confession or consent to search." *Commonwealth v. Mancini, supra,* 340 Pa.Super. at 603, 490 A.2d at 1383. More importantly, while the record demonstrates that appellant was briefly prohibited from leaving the prison for security reasons, there is no evidence that appellant was in custody, as she was told that she was free to leave. *See* Suppression Hearing Transcript, 6/9/88, at p. 33. Accordingly, we find that appellant's brief detention for security reasons was insufficient to support a finding of coercion.

Appellant further alleges that her consent was coerced by the fact that she could lose her visitation privileges for a period of six months to one year. This factor, however, is irrelevant to our consideration of whether appellant was coerced by the prison authorities. While it may be true that the possible loss of visitation privileges is "coercive" to the extent that it may deter a visitor from smuggling contraband into the prison, "coercion" of this type was not intended to be protected by the Fourth Amendment. As discussed above, the "coercion" sought to be avoided would involve stealth, deceit, misrepresentation or physical duress applied by the law enforcement authorities. *See Walsh, supra.* In this case, the record is devoid of this type of prohibited conduct. The prison authorities did not in any way force appellant to reveal the contraband which she had concealed on her person; they only advised her of the consequences of her refusal to consent to a search. In addition to these considerations, we note that visitors do not possess an absolute right to enter a prison, *see e.g.,* 61 P.S. § 630, 37 Pa.Code § 93.3 and *Commonwealth v. Dugger,* 311 Pa.Super. at 311, 457 A.2d at 901 (dissenting opinion) (Wieand, J.). In fact, the privilege may be completely withdrawn where an individual poses a threat to the security of the institution. *See e.g., Dugger, id.* (dissenting

opinion), and 37 Pa.Code § 93.3(i)(1). Therefore, by warning appellant that she could lose her visitation privileges if she did not consent to a search, the prison officials were merely enforcing their prerogative to deny visitation privileges to individuals who were suspected of posing a threat to the security of the prison. For these reasons, we conclude that the possible loss of appellant's visitation privileges did not constitute coercion.

■ Appellant also suggests that the trial court erred in suppressing the evidence because it was obtained as a result of an illegal arrest. For support, appellant refers us to the case of *Commonwealth v. Harris*, 491 Pa. 402, 421 A.2d 199 (1980). *Harris* is factually distinguishable from this case, however. In *Harris*, the defendant was a passenger in a van which, along with another vehicle and its occupants, was suspected of involvement in a robbery. After pursuing the van and the other vehicle, both vehicles were pulled over and the occupants were taken to the police station for the purpose of checking the validity of the operators' licenses. While at the police station, the defendant requested to use the men's room. After gaining access to the restroom, the defendant deposited stolen credit cards and other evidence in the toilet tank. On appeal, the Supreme Court held that the evidence should have been suppressed as the result of an illegal arrest. In reaching this result, the court reasoned that because the defendant was not driving the van, the police lacked sufficient probable cause to detain appellant and inspect his driver's license.

In *Harris*, we note that the standard used in evaluating the validity of the arrest was based on probable cause. In applying this standard, the *Harris* court concluded that the evidence was insufficient to establish probable cause, because of the unique facts contained in the record. In this case, however, the standard to be used in searching a visitor is "reasonable suspicion", not probable cause. *See Dugger, supra.* As discussed above, we concluded that the prison authorities had more than sufficient reasonable suspicion to search appellant. Therefore, appellant's argument that the

arrest was illegal due to lack of probable cause is without merit.

More importantly, we are unable to conclude that the brief detention to which appellant was subjected constituted an arrest. An arrest has been defined as " 'any act that indicates an intention to take the person into custody and subjects him to the actual control and will of the person making the arrest.' " *Commonwealth v. Freeman*, 386 Pa.Super. 105, 109–110, 562 A.2d 375, 378 (1989), quoting *Commonwealth v. Lovette*, 498 Pa. 665, 671, 450 A.2d 975, 978 (1982), *cert. denied*, 459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d 1025 (1983).

The record indicates that appellant was informed that she was free to leave the prison. *See* Suppression Hearing Transcript, 6/9/88, at p. 33. However, appellant was also informed that she would have to wait for a police escort for security reasons. *See id.* As explained by Eckenroth, it was the policy of the prison to have the police escort visitors, who were suspected of carrying contraband and who refused to be searched, outside the prison grounds. *See id.* at pp. 26–27, 33–34 and 41–42. Eckenroth further testified that the reason for the police escort was to prevent visitors from discarding any contraband on the prison grounds where it could be later picked up by the inmates. *See id.* at p. 39. Therefore, the record indicates that appellant was only restricted from roaming the prison grounds for security reasons. This temporary restriction on appellant's freedom cannot be deemed an arrest, for she was not restrained in any way, and was informed that she was free to leave the prison. In view of the unique circumstances relating to prison security, and in view of the fact that appellant was expressly given permission to leave the prison, we hold that appellant's brief detention did not constitute an illegal arrest.

The second issue raised by appellant involves the trial court's failure to declare a mistrial after one of the Commonwealth's witnesses made reference to appellant's right to remain silent. As stated by our Supreme Court, "a

motion for a mistrial is addressed to the discretion of the [trial] court. It is primarily within the court's discretion to determine whether a defendant was prejudiced by the misconduct." *Commonwealth v. Duffey,* 519 Pa. 348, 362, 548 A.2d 1178, 1184–1185 (1988). We will address appellant's assignment of error in accordance with this standard.

The specific reference complained of was elicited during the direct examination of Officer Douglas Knoblauch. Officer Knoblauch was asked by the prosecutor to describe the events which occurred after he arrived at the prison, and testified as follows:

A. —was standing with Prison Matron Sims. Okay? I at that point confronted Miss Gumby as to who I was, why I was there, and at that point I read her her constitutional rights.

Q. Before she was read her rights,—

A. Yes?

Q. —before she was placed under arrest,—

A. Yes?

Q. —did she make any statement?

A. No. I then asked her for some identification, which she did not identify herself to me. I asked her if she wanted to discuss this incident with me. She said she did not.

*See* N.T., 10/12/88–10/13–88, at p. 136.

Appellant correctly notes that references to a criminal defendant's *post*-arrest silence are improper. *See e.g., Commonwealth v. Freeman, supra,* 386 Pa.Super. at 110–111, 562 A.2d at 378. However, there does not appear to be a similar prohibition with respect to references to a defendant's *pre*-arrest silence. *See Commonwealth, v. Gbur,* 327 Pa.Super. 18, 26, 474 A.2d 1151, 1155 (1984); *cf., Commonwealth v. Turner,* 499 Pa. 579, 454 A.2d 537 (1982). Without regard to whether the question is deemed to refer to appellant's pre-arrest or post-arrest silence, we find that the trial court properly denied appellant's motion for mistrial,

as defense counsel waived her objection to the prosecutor's question.

> 'It is fundamental that the parties in a trial are obligated to inform the court of alleged violations of evidence law or trial procedure, and that failure to so inform the court by a timely and specific objection, motion, exception, request, or offer of proof will constitute a waiver of that ground for relief.'... [Therefore,] '[t]he failure to raise an issue, objection, or argument in a timely manner during trial forecloses further review of an alleged error in post-trial motions or at the appellate level.'...

*Commonwealth v. Schneider,* 386 Pa.Super. 202, 214, 562 A.2d 868, 874 (1989) (citations omitted), *allocatur denied,* —— Pa. ——, 575 A.2d 564 (1990).

The record demonstrates that defense counsel did not object to the prosecutor's questioning until after the witness had been cross-examined and excused from the witness stand. *See* N.T., 10/12/88–10/13/88, at p. 157. We find, as did the trial court, that defense counsel's objection was untimely, and therefore, that any objection to the question must be deemed waived. Accordingly, we discern no error in the trial court's denial of the motion for mistrial.

In sum, we conclude that the trial court did not err in denying appellant's motion to suppress the evidence, as there was no indication that appellant's consent to the search was coerced or that the evidence was obtained as the fruit of an illegal arrest. Further, we conclude that the trial court properly denied appellant's motion for a mistrial, since appellant's trial counsel waived any objection to the allegedly improper question by waiting until after the witness had been excused before raising the issue. Therefore, we affirm the judgment of sentence.

Judgment of sentence affirmed.