Opinion by
Wright, P. J.,
David GL Barclay was indicted in the Court of Quarter Sessions of Lancaster County on Bill No. 118 September Sessions 1966, which charged the offense of racing on the highway as proscribed by the amendment to The Vehicle Code set forth in the Act of January 8, 1960, P. L. (1959) 2118, 75 P.S. 1041. Barclay entered a plea of not guilty and, being represented by private counsel, was tried before Judge Brown and a jury. Following a verdict of guilty, motions for a new trial and in arrest of judgment were filed and dismissed and sentence was imposed. This appeal by Barclay followed. The factual situation appears in the following excerpt from the opinion of the court below:
“From the record which the court has carefully considered in this matter the evidence shows that on August 24, 1966, at about 3:30 o’clock p.m., Mrs. Mary Libhart was working in her garden along the Colebroolc Road northeast of Marietta, Lancaster County, Pennsylvania, when she became aware of a motorcycle and a car coming up over the hill and stopping almost in front of her garden. She testified that the road here is a macadam surface with two lanes of traffic. While there she had observed a roadster type of automobile with a light tan or yellow bottom and black or dark top and a motorcycle which were stopped side by side on the road, with the car in the left lane and the motorcycle in the right lane. She further testified that she heard one of the operators say, ‘Are you ready?’ and thinking that this sounded odd, she looked up and as *27 she did she heard a roaring of motors and screaming of tires and stones flying, and they took off up the hill, and it appeared that the driver was going to lose control of the car; that he swerved and finally straightened out and on up over the hill they went and disappeared over the top of the hill. She said she observed these cars for about a quarter of a mile. She then said she went back to work in her garden and it was just a matter of a few minutes when she again heard roaring engines and tires screaming and she didn’t see how it was possible that they could be coming back again, but that is exactly what happened. She looked over the hill and saw them coming back and the car was on the right side returning and the motorcycle on the left side returning, at which time the vehicles were again racing in the opposite direction from the original point of departure. Mrs. Libhart then testified that as the vehicles passed her home both she and John Parker, a fourteen year old boy who was on the other side of the highway, took the license number of the automobile. The description of the automobile and the license number, which were on temporary plates, were given to Chief Marvin Foltz and it appears from the testimony that Foltz located the vehicle answering the description of the one involved in the alleged racing at or about 6:00 o’clock p.m. on the same day at the home of the defendant Barclay. The testimony of John Parker and Carl Libhart, two teenage boys who were standing on the opposite side of the road from Mrs. Libhart, also corroborated her testimony that there was racing on the highway as indicated by Mrs. Libhart”.
It is appellant’s contention, and this is the sole question involved in the instant appeal, that the trial judge erred in admitting testimony of a police officer as to statements made to him by appellant without any warning of his right to remain silent or to have counsel. The record discloses that, pursuant to information received, *28 the police officer called at appellant’s home. The conversation which ensued is set forth in the footnote.[1] Appellant’s contention is based primarily on Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, wherein the United States Supreme Court said: “To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities . . . and is subjected to questioning, the privilege against self-incrimination is jeopardized”. Our own Supreme Court has stated in Commonwealth v. Sites, 427 Pa. 486, 235 A. 2d 387, that “for a statement obtained from an individual subjected to in-custody police questioning to be admissible as trial evi *29 dence, it is an absolute requirement that the Commonwealth demonstrate, inter alia, that before the questioning began the suspect was clearly informed of his right to have his own legal counsel present during the questioning. And in order to apprise the suspect fully of his rights in this regard, it is indispensable not only that he be warned of his right to have counsel but also that he be advised that a lawyer will be appointed to represent him if he is indigent”.
Appellant cites Commonwealth v. Jefferson, 423 Pa. 541, 226 A. 2d 765, wherein the defendant made two statements. The first was held to be admissible as “truly a volunteered spontaneous freely-made utterance to general questioning of citizens in the police fact-finding process”. The second statement was ruled inadmissible because “the investigation had certainly begun to focus on her as the accused; and, she was certainly not free to leave and at least technically ‘in custody’. Custodial interrogation is not limited to police station questioning or that occurring after a formal arrest”. The distinction between investigative and custodial interrogation is pointed out in Commonwealth v. Sites, supra, 427 Pa. 486, 235 A. 2d 387. No fault was found concerning the original questioning of Sites by investigating officers who were seeking to establish ownership of an automobile seen in the driveway of decedent’s home. However, an entirely different situation was presented by the questioning of the officers on the following day when Sites was definitely in custody.
In our view the controlling issue in the case at bar is whether appellant, at the time of questioning by the police officer, had been taken into custody or otherwise deprived of his freedom. We do not equate the present factual situation with that surrounding the interrogation proscribed in either the Jefferson or Sites cases. Cf. Commonwealth v. Eperjesi, 423 Pa. 455, 224 *30 A. 2d 216. To hold that the instant situation involved a custodial interrogation in violation of appellant’s constitutional rights would be an unwarranted expansion and extension of the Miranda case, wherein “the defendant was thrust into an unfamiliar atmosphere and run through menacing police interrogation procedures”. We adopt the following statement from the well considered opinion of the court below:
“The Commonwealth contends in its brief that the defendant Barclay was at no time arrested or taken into custody and the conversation which occurred when Foltz was invited into his home by Barclay’s wife, and with his father present, in no sense of the word deprived Barclay of his freedom of action in any significant way. He was free to come or go, to remain with the Chief or order him to leave, or to remain on the sofa where he had been initially, if he wished to do so. At that time and place the officer had no authority to arrest the defendant until he first procured a warrant of arrest from a magistrate’s office, and this court feels that no fair or proper application of the principles of Miranda and Escobedo to this case could in any way indicate that Barclay at the time of his conversation with Foltz was either in custody or otherwise deprived of his freedom. The court therefore feels the evidence of this conversation was properly admissible in evidence”.
Judgment affirmed.

 “Q. Was anyone with you when you went to this home? A. No, I was alone. Q. What did you do when you arrived there? A. I knocked on the door and the defendant’s wife opened. I asked for David and she invited me in. If I remember correctly, David was laying on the sofa resting. He got up and I had then conversation with him about the race that was held that afternoon. Q. All right, tell us that conversation. . . A. I told the defendant that I had a complaint that he was involved in a drag race that afternoon, and the defendant then admitted to me that he had been racing, and I asked him who the other participant was in the race and he said his brother-in-law, Clark Arnold. . . This took place in the presence of his father and his wife. . . Q. Mr. Foltz, I stated this morning and you offered no objection to it but I want just to do this for the purposes of the record. When you talked to Mr. Barclay, did you warn him that he had a right to counsel? A. No, sir, I did not. Q. Did you warn him that he had a right to remain silent? A. No, sir, I did not. . . Q. But was he the prime subject of your investigation at the time? A. Not at the time I went into the house. After the conversation he was the prime subject. Q. At the time you were talking to him? A. At the time he had told me that he was the participant in this race, yes. Q. Let me ask you this. Did you in your conversation with him accuse him of racing out on the highway? A. Tes, I did. . . Q. Before you leave, Chief Foltz, had the Defendant, Barclay, during that conversation-had he denied that he was operating the car what would you have done? A. I then would have gotten up and walked out of the house and left him there. I couldn’t have done anything”.