396 A.2d 802

COMMONWEALTH of Pennsylvania

v.

Anthony BRODO, Appellant.

Superior Court of Pennsylvania.

Submitted June 19, 1978.

Decided Jan. 19, 1979.

John W. Packel, Assistant Public Defender, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT, SPAETH and HESTER, JJ.

PER CURIAM:

Appellant contends that the lower court erred in refusing to suppress: (1) oral admissions made at his home because police officers did not give him *Miranda* warnings, and (2) a subsequent confession at police headquarters because it was tainted by the initial alleged custodial interrogation. Because we find appellant's contentions without merit, we affirm the judgments of sentence.

On November 9, 1976, Philadelphia police arrested appellant on charges stemming from the September 30, 1976 burglary of the Royal Villa Bar and the October 28, 1976 burglary of Michael's Dog Grooming Parlor. On January 11, 1977, the lower court held a hearing on appellant's motion to suppress two statements made by appellant on the day of his arrest. Testimony at that hearing revealed the following facts: On November 9, 1976, Detectives O'Shea and Romano of the Philadelphia Police Department began to investigate the burglary of Mrs. Gentile's home. Other officers in-

formed the detectives that Mrs. Gentile had identified appellant from police photographs as a "possible" burglar of her home and that based upon a statement of the owner of the Royal Villa Bar, appellant was also a suspect in the September 30, 1976 burglary of that bar. From the detectives' interview with the bar owner on November 9, 1976, they learned that (a) a burglar had stolen the owner's cash register and other items, (b) appellant's mother had told the owner that his stolen cash register was at her home, and (c) a "similar" burglary had occurred at Michael's Dog Grooming Parlor across the street from the bar. From their subsequent interview with the owner of the dog parlor, the detectives learned that on October 28, 1976 a burglar had stolen some cash, framed photographs of nude women "similar to the old-time calendars," a small black ceramic buddha doll and other items. With all of the above information, the detectives went to appellant's home at approximately 3:00 p. m. on November 9, 1976 to question him about the burglaries of the Gentile home and the Royal Villa Bar. Appellant's mother admitted the detectives into the home when they asked her whether appellant was there. While waiting for appellant, the detectives observed a photograph of a nude woman and a black buddha doll, both matching the description of the items taken in the dog parlor burglary. When appellant came downstairs, the detectives asked him whether the items were his and where he obtained them. Appellant answered that they were his and that he had bought them from someone coming out of the dog parlor. The detectives then gave appellant *Miranda* warnings and asked him whether he would voluntarily accompany them to headquarters and bring the photograph and buddha doll with him. Appellant agreed. En route to headquarters, the detectives stopped at the dog parlor where the owner identified the photograph and buddha doll as those stolen during the burglary of his shop. At headquarters, the detectives again gave appellant *Miranda* warnings. Appellant waived his rights and confessed to burglarizing both the bar and the dog parlor. He signed his confessional statement at 4:30 p. m.

On January 11, 1977, after hearing the above testimony, the lower court denied appellant's motion to suppress the statements he made at his home and at headquarters, proceeded immediately to trial without jury, and found appellant guilty on two bills each charging burglary, theft by unlawful taking, and theft by receiving stolen property. On March 30, 1977, after denying appellant's written post-verdict motions, the lower court sentenced appellant to two consecutive 10 year terms of probation. This appeal followed.

Appellant contends that the lower court erred when it refused to suppress the statements he made at his home prior to the first *Miranda* warning. In *Commonwealth v. Anderson*, 253 Pa.Super. 334, 345–347, 385 A.2d 365, 370–71 (1978), we described the following guidelines used to determine "when a 'custodial interrogation' which triggers the need for *Miranda* warnings occurs. First, the mere fact that the police investigation has focused on a particular person will not require *Miranda* warnings before police interviews with that person. *See Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); *Commonwealth v. McLaughlin*, 475 Pa. 97, 379 A.2d 1056 (1977). Second, if the police in fact place a person in custody or restrict his freedom in any significant way prior to, or during, the interview, then the interrogators must advise that person of his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Commonwealth v. Leaming*, 432 Pa. 326, 247 A.2d 590 (1968); *Commonwealth v. Moody*, 429 Pa. 39, 239 A.2d 409 (1968), cert. denied, 393 U.S. 882, 89 S.Ct. 189, 21 L.Ed.2d 157 . . . . Third, a suspect actually may be in custody even if the police have not taken him to a police station or formally arrested him. Fourth, . . . 'custodial interrogation' occurs when a suspect '. . . is placed in a situation in which he reasonably believes that his freedom is restricted by such interrogation.' *Commonwealth v. Brown*, 473 Pa. 562, 570, 375 A.2d 1260, 1264 (1977); . . . ." (footnote omitted).

In the instant case, the two detectives wished to question appellant about two burglaries. While waiting for him inside his home, they noticed some items matching the descriptions of items taken in a third burglary. Prior to giving *Miranda* warnings, they asked appellant only two short questions: were the items his and where did he get them. Appellant responded to both questions. Although the detectives had focused on appellant as a suspected burglar, they did not formally arrest him at his home, expressly indicate that he would be detained until he answered their two questions, or give him any other reason to suspect that he was not free to leave or terminate the interview. Their interrogation was short and occurred in appellant's own home. Under all these circumstances, we find that the detectives were not conducting a "custodial interrogation: and, consequently, that they were not required to give appellant *Miranda* warnings before the interview.

Appellant also contends that the lower court should have suppressed his statement made at police headquarters after *Miranda* warnings and waiver because it was a fruit of the poisonous first statement he made at his home. Because we have held that the first statement was not obtained in violation of appellant's constitutional rights under *Miranda*, we reject appellant's second contention.

Judgments of sentence affirmed.

SPAETH, J., filed a concurring opinion.

This case was decided prior to the retirement of JACOBS, former President Judge.

HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, concurring:

Although I agree that appellant is not entitled to a new trial, I cannot join the majority's holding that the detectives' interrogation of appellant in his home was legal.

–1–

Two detectives of the Philadelphia Police Department went to appellant's home to investigate his participation in three recent burglaries. The detectives had been informed that the complainant in the first burglary had identified appellant as the possible burglar of her house. The complainant in the second burglary, the owner of a bar at 17th and Jackson Streets in South Philadelphia, had told the detectives that appellant's mother had told him that the cash register taken from the bar during the burglary was now at her house, where appellant lived. Finally, the complainant in the third burglary, the owner of a dog grooming parlor also located at 17th and Jackson Streets, had described for the detectives the items taken from his shop.

When the detectives arrived at appellant's home, they were admitted by appellant's mother. As they waited in the living room for appellant to come down from the second floor, the detectives noticed a black ceramic Buddha doll and a photograph of a nude woman "similar to the old-time calendars," both in plain view and both matching the descriptions given them by the owner of the dog grooming parlor. When appellant entered the living room, the detectives asked him if the items were his. Appellant gave an affirmative response, and the detectives asked where he obtained them. Appellant replied that he had purchased them from someone coming out of the dog grooming parlor at 17th and Jackson. The detectives then gave appellant *Miranda* warnings and arrested him.[1] Appellant was taken to police headquarters, where he gave a full confession, which incriminated him completely in the two burglaries for which he stands convicted. This confession was given approximately ninety minutes after appellant was arrested, and after he was given *Miranda* warnings a second time.

1. Although the detectives did not declare to appellant that they were placing him under arrest, but rather asked whether he would "voluntarily" accompany them to police headquarters, it would be incredulous to believe that appellant was free to refuse to comply with their request. *See Commonwealth v. Farley*, 468 Pa. 487, 364 A.2d 299 (1976). The Commonwealth has not disputed appellant's assertion that he was arrested when he left his home with the detectives.

The majority holds that appellant was not entitled to *Miranda* warnings prior to the interrogation in his home because the interrogation occurred before his arrest, and because appellant had no reason to believe that he was powerless to terminate the interview. I think the facts just recited—all established by uncontroverted evidence—demonstrate that appellant had sufficient cause to believe that he was in custody during the interrogation, and that consequently the detectives were required to warn appellant of his *Miranda* rights before questioning him.

In *Commonwealth v. Anderson*, 253 Pa.Super. 334, 345–347, 385 A.2d 365, 370–71 (1978), we established guidelines for distinguishing the situations where *Miranda* warnings are required prior to police interrogation:

> First, the mere fact that the police investigation has focused on a particular person will not require *Miranda* warnings before police interviews with that person. . . Second, if the police in fact place a person in custody or restrict his freedom in any significant way prior to, or during, the interview, then the interrogators must advise that person of his *Miranda* rights. . . . Third, a suspect actually may be in custody even if the police have not taken him to a police station or formally arrested him. Fourth, and this proposition is not without some doubt, "custodial interrogation" occurs when a suspect ". . . is placed in a situation in which he reasonably believes that his freedom of action of movement is restricted by such interrogation." (Footnotes and citations omitted.)

In the present case, the majority has misapplied these guidelines by failing to give due consideration to the fact that at the time of interrogation, the police investigation of the burglaries had focused on appellant. Although, as we said in *Anderson*, the mere fact that a police investigation has focused on an individual will not require *Miranda* warnings prior to questioning by police, "[t]he focusing test continues to be relevant in determining whether an individual is in custody," *Commonwealth v. Simala*, 434 Pa. 219, 225, 252 A.2d 575, 578 (1969), or whether an individual has been

placed in a situation where he has reason to believe "that his freedom of action of movement is restricted by such interrogation." *Commonwealth v. Brown*, 473 Pa. 562, 375 A.2d 1260, 1264 (1977); *Commonwealth v. Fisher*, 466 Pa. 216, 221, 352 A.2d 26, 28 (1976); *Commonwealth v. Anderson*, 253 Pa.Super. at 347, 385 A.2d at 371.

The relevancy of the focusing test has been established in a long line of cases. In *Commonwealth v. Peters*, 473 Pa. 72, 373 A.2d 1055 (1977), the defendant went voluntarily to the courthouse on two occasions to be interrogated by the police in connection with a homicide. When the defendant arrived for the second interrogation, he was told by a police detective that he had been called back because the police had been informed by a third person that he possessed more information concerning the murder than he had disclosed at the first interrogation. The police gave the defendant *Miranda* warnings prior to his second interrogation. However, in passing on the defendant's claim that his waiver of *Miranda* rights was involuntary, the Supreme Court found it necessary to determine whether the defendant was entitled to *Miranda* warnings prior to that interrogation. In holding that the defendant was entitled to *Miranda* warnings, the Court said:

> It is thus apparent to us that, considering all of the circumstances, Peters had become the "focus" of the investigation, *Escobedo v. Illinois*, 378 U.S. 478, 490, 84 S.Ct. 1758, 1765, 12 L.Ed.2d 977 (1964), and he could have reasonably believed his freedom of movement was restricted by the authorities' request for interviews and by the interviews on both March 8th and March 16th. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The authorities knew Peters was one of the last persons to have seen Motto alive, see *Commonwealth v. Romberger*, [454 Pa. 279, 312 A.2d 353] *supra* ; they knew Peters had more information that he had given them in 1969 *and so informed Peters on March 8th* ; they did, in fact, warn him of his rights on both occasions; and, they questioned him in a manner " '.   .   . calculated to,

expected to, or likely to, evoke admissions.' " *Common-wealth v. Yount*, 455 Pa. 303, 309, 314 A.2d 242, 245 (1974) quoting *Commonwealth v. Simala*, 434 Pa. 219, 226, 252 A.2d 575, 578 (1969). (footnote omitted) 473 Pa. at 85–86, 373 A.2d at 1062.[2]

In *Commonwealth v. Yount*, 435 Pa. 276, 256 A.2d 464, *cert. denied*, 397 U.S. 925, 90 S.Ct. 918, 25 L.Ed.2d 104 (1969),[3] the defendant appeared at a police station and said, "I'm the man you are looking for;" when asked by the police whether he was referring to a certain recent homicide, the defendant replied affirmatively. The Court held that although the defendant's statements were volunteered up to this point, once the police possessed this information and centered their investigation on him, they were required to give *Miranda* warnings before asking the defendant how he committed the crime. In *Commonwealth v. Jefferson*, 423 Pa. 541, 226 A.2d 765 (1967), the Court held that once the police investigation focused on the defendant after he gave a voluntary, inculpatory statement, *Miranda* warnings were required prior to further questioning. Finally, in *Commonwealth v. Barclay*, 212 Pa.Super. 25, 240 A.2d 838 (1968), the police chief of a small town went to the defendant's home after receiving information that the defendant's automobile had been involved in an illegal drag race earlier that afternoon. The chief was admitted by the defendant's wife, and taken into the living room. There, in the presence of the defendant's wife and father, the chief accused the defendant of drag racing. Although a majority of this court held that the defendant's admission of guilt in response to the chief's accusation did not have to be suppressed because of the chief's failure to give *Miranda* warnings, the precedential

2. Although only Justice O'BRIEN joined Chief Justice EAGEN's opinion in its entirety, Justices ROBERTS, NIX and POMEROY agreed that the defendant's *Miranda* rights had been violated. Justice MANDERINO dissented on the grounds that the defendant should not have been retried, but should have been discharged altogether because his double jeopardy rights had been violated. Former Chief Justice JONES did not participate in the consideration of *Peters*.

3. *See also Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974) (companion case).

value of this holding was destroyed by two subsequent Supreme Court decisions that specifically approved of Judge HOFFMAN's dissent in *Barclay*. *See Commonwealth v. D'Nicuola*, 448 Pa. 54, 57, 292 A.2d 333, 335 (1972); *Commonwealth v. Feldman*, 432 Pa. 428, 432, 248 A.2d 1, 3 (1968). Judge HOFFMAN stated that the fact that the police chief did not go to the defendant's house to arrest the defendant, and that the chief would not have made an arrest had the defendant denied his participation in the drag race, did not control the issue of whether *Miranda* warnings should have been given. What was important was that the chief had at the time of interrogation "a fairly clear notion that Barclay had been racing on the highway, and that Barclay knew immediately he was the focus point of the investigation." *Commonwealth v. Barclay*, 212 Pa.Super. at 33, 240 A.2d at 842 (HOFFMAN, J., dissenting). Hence, *Miranda* warnings were required prior to the interrogation. *See also Commonwealth v. O'Shea*, 456 Pa. 288, 318 A.2d 713, *cert. denied*, 419 U.S. 1092, 95 S.Ct. 686, 42 L.Ed.2d 685 (1974); *Commonwealth v. D'Nicuola, supra; Commonwealth v. Bennett*, 439 Pa. 34, 264 A.2d 706 (1970); *Commonwealth v. Feldman, supra; Commonwealth v. Sites*, 427 Pa. 486, 235 A.2d 387 (1967).

In the present case, as in *Peters, Yount, Jefferson*, and *Barclay*, the focus of the police investigation had centered on appellant at the time of the interrogation. To recapitulate the facts: The police entered appellant's home with information linking him to two burglaries and a description of the items taken during a third. Inside appellant's home, they observed items matching descriptions given to them. When appellant came into the living room, he was confronted at once with questions directed specifically at his possession of those items. Under these circumstances, appellant had good cause to believe that the detectives had come to arrest him, and that he was not free to terminate the interrogation. Moreover, the questions asked by the detectives were "calculated to, expected to, or likely to, evoke admissions." *Commonwealth v. Peters*, 473 Pa. at 86, 373

A.2d at 1062; *Commonwealth v. O'Shea*, 456 Pa. at 291, 318 A.2d at 714; *Commonwealth v. Simala*, 434 Pa. at 226, 252 A.2d at 578.

We noted in *Commonwealth v. Anderson*, 253 Pa.Super. at 345, 385 A.2d at 371, that our Supreme Court in its recent decisions has not overruled *sub silentio* the long line of Pennsylvania cases holding that *Miranda* warnings are required whenever " 'a suspect is placed in a situation in which he reasonably believes that his freedom of action of movement is restricted by . . . interrogation [by the police].' " (Citations omitted.)  Likewise, I do not believe that the Supreme Court has overruled *sub silentio* an equally long line of cases holding that in determining the reasonableness of the defendant's belief that his freedom of action has been restricted, the court should consider the extent to which he is the focus of the police investigation.

–2–

Nevertheless, I do not believe a new trial is required in this case.  Ninety minutes after appellant's arrest, he gave a full confession to the police completely incriminating himself in the burglaries of the dog grooming parlor and bar.  Prior to making this confession, appellant had been warned twice of his *Miranda* rights.  Appellant does not argue now that this confession resulted from police exploitation of the statements he gave at his home, or that he felt coerced into making his confession because of the earlier statements.  Rather, he argues only that without the incriminating statements that the detective illegally obtained from him, there was no probable cause for his arrest; and further, that his subsequent confession was tainted by the illegal arrest.

I agree with appellant's argument that in determining whether there was probable cause for his arrest, we must ignore the illegally obtained statements; but I disagree with his argument that without the statements the detectives did not have probable cause.

Our cases hold that probable cause exists if the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a [reasonable man] in the belief that the suspect has committed or is committing a crime.

*Commonwealth v. Jones*, 478 Pa. 172, 386 A.2d 495, 497 (1978), *citing, Commonwealth v. Levesque*, 469 Pa. 118, 127, 364 A.2d 932, 937 (1976), and *Commonwealth v. Culmer*, 463 Pa. 189, 195, 344 A.2d 487, 490 (1975). "[T]he evidence required to establish 'probable cause' need not amount to that required to convict . . . however, it must be more than that which gives rise to a mere suspicion." *Commonwealth v. Hill*, 237 Pa.Super. 543, 543, 353 A.2d 870, 874 (1975), *quoting, Commonwealth v. Dussell*, 439 Pa. 392, 397, 266 A.2d 659, 662 (1970).

In the present case, the detectives possessed a number of facts that were insufficient individually to furnish probable cause for appellant's arrest. Nevertheless, " '[b]ecause the whole is necessarily more than any of its parts in law as well as mathematics the standard of probable cause must be applied to the totality of circumstances facing the officer and not each individual element apparent before the arrest . . . .' Facts insufficient to justify an arrest if considered separately may in combination supply probable cause." *Commonwealth v. Roscioli*, 240 Pa.Super. 135, 138, 361 A.2d 834, 836 (1976), *quoting Commonwealth v. Young*, 222 Pa.Super. 355, 358, 294 A.2d 785, 786 (1972). Applying this principle here, I find probable cause, although the case is close. I think the detectives lacked probable cause when they went to appellant's home, but that they got it when they added to the facts they knew their observation inside the home of items that matched the stolen items. *See generally Commonwealth v. Mackie*, 456 Pa. 372, 320 A.2d 842 (1974); *Commonwealth v. Brayboy*, 431 Pa. 365, 246 A.2d 675 (1968); *Commonwealth v. Ellsworth*, 421 Pa. 169, 218 A.2d 249 (1966); *Commonwealth v. Harris*, 255 Pa.Super. 8, 386 A.2d 108 (1978).

Therefore, because appellant's arrest was legal and his subsequent confession was not tainted by his previous statements, the confession was admissible at trial. Furthermore, because the confession incriminated him completely in the two burglaries, the admission of the illegally obtained evidence was harmless beyond a reasonable doubt. *See Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978); *Commonwealth v. Davis*, 452 Pa. 171, 305 A.2d 715 (1973).

For these reasons I concur in the majority's disposition.