## Commonwealth v. Greer

*Christy H. Fawcett, assistant district attorney,* for the Commonwealth.

*Robert Bruce Evanick,* for defendant.

ERB, *J.,* May 14, 1991—Defendant was found guilty in a trial before a jury of kidnapping, rape, involuntary deviate sexual intercourse, crimes committed with firearms, violation of the Uniform Fire-

arms Act, burglary and terroristic threats. Defendant has filed post-verdict motions, which are currently before this court for disposition. For the following reasons, they will be refused and denied.

Defendant raises four issues in his request for a new trial. He first contends that the court should have suppressed statements he made at his apartment, prior to receiving *Miranda* warnings. The following facts were elicited at the suppression hearing and at trial. The police went to defendant's apartment after discovering that the perpetrator of the crimes was a black man in his twenties, who was approximately 6 feet 3 inches tall and 170 pounds. The victim had also given a detailed description of the car, including its interior, in which the crimes occurred. The police found a car matching the description provided. The officers then discovered that the vehicle was registered to defendant's girlfriend at 134 East Jackson Street, York, Pennsylvania. The police officers went to that address, and defendant's girlfriend consented to the officers looking through the apartment. During that time, the officers found defendant hiding in the attic, wearing nothing but a gold chain similar to the one that the victim described her attacker wearing. Defendant came down from the crawl space and voluntarily provided information and items of clothing which police requested. Defendant contends that his statements and the physical evidence acquired at the apartment should have been suppressed.

The focus of this inquiry is whether defendant's statements and the evidence were gained as a result of a "custodial interrogation." *Miranda v. Arizona,* 384 U.S. 436 (1966). A "custodial interrogation" involves "questioning initiated by law enforcement officers after a person has been taken into custody

or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444.

It is clear that the mere fact that the police focus on a particular individual during their investigation does not trigger the necessity of *Miranda* warnings prior to a police interview with that individual. *Commonwealth v. Schoellhammer*, 308 Pa. Super. 360, 454 A.2d 576 (1982). We are particularly persuaded by *Commonwealth v. Brodo*, 262 Pa. Super. 375, 396 A.2d 802 (1979). In the *Brodo* case, two detectives went to defendant's home to question him about two burglaries. While there, the detectives noticed items taken in a third burglary. Although the detectives focused on defendant as a suspect, they neither arrested defendant at home, nor indicated that defendant was to be detained until answering their questions. Furthermore, defendant had no reason to suspect that he was not free to leave or terminate the interview. The Superior Court held that this was not a "custodial interrogation" which necessitated *Miranda* warnings. Thus, the court denied defendant's motion to suppress statements made at his home.

Similarly, in the instant case, defendant was not formally arrested at the apartment, was not detained at the apartment until answering police questions, and did not perceive that he could not terminate the interview or leave. After the questioning, he was asked to accompany the officers to City Hall, where he was advised of his rights and signed a rights card. Defendant expressed surprise that the police wished to further discuss the incident, thus supporting the court's finding that defendant believed he had freedom of movement. During this ride, defendant notes that he was handcuffed; however, this is the general policy followed by the city police.

We conclude that defendant was not subjected to a custodial interrogation at his apartment, and thus, *Miranda* warnings need not have been given. We will therefore dismiss defendant's assignment of error.

Defendant next contends that the testimony of the Federal Bureau of Investigation DNA expert was erroneously admitted since there was no statistical analysis to demonstrate the validity of his conclusion. Defendant cites *People v. Castro*, 545 N.Y.S. 2d 985 (1989), in which the expert was required to state the method used to calculate the allele frequency in the relevant population. Defendant argues that since this was not done, the Commonwealth failed to establish the proper foundation. We disagree. In Pennsylvania, the following standards govern the admissibility of scientifically adduced evidence:

"Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs." *Commonwealth v. Topa*, 471 Pa. 223, 231, 369 A.2d 1277, 1281 (1977), quoting *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013, 1014 (1923).

In this jurisdiction, expert testimony regarding DNA test results are admissible. The FBI expert in this case, Larry Presley, has testified in numerous state and federal courts, which have recognized him as an expert in DNA analysis, despite the absence of allele frequency studies. Presley also testified that

DNA testing and procedures have gained wide acceptance in the scientific community. This court is satisfied with the expert testimony which provided the procedures, methods, results and interpretation; and we conclude that it was appropriately admitted. Defendant furthermore was allowed to extensively cross-examine the expert witness on the lack of an allele frequency study. The court properly instructed the jury that it could then weigh the value of the expert testimony since it is the jury's function to give whatever probative weight it chooses to expert testimony. We will therefore dismiss this assignment of error. In so doing, we note the abundance of evidence, other than the DNA test results, which positively identified the defendant as the perpetrator of the crime. Thus, the case against defendant did not turn solely on the DNA test results.

Defendant next assigns error to the assistant district attorney's closing statements concerning the victim's perception of the color of her attacker's hands. The victim observed this while in the car with him during the offenses. The victim stated that the hands were those of a light-skinned black man. However, defendant was a dark-complected black male. The victim had also previously identified defendant at a lineup based, in part, on his hands. The assistant district attorney, in her closing argument to explain this discrepancy, argued that the victim's perception was altered by the street lighting shining in through the car window. Defendant argues that there was no evidence to support this theory. The Commonwealth, in turn, contends that it is common knowledge that street lights shining through car windows can change the appearance of colors. The Commonwealth had established from the victim's testimony that street lighting illuminated the car's interior during the nighttime rape.

We conclude that such inference, drawn from the facts, was proper. The jury was instructed to use its own recollection of the testimony and resolve it accordingly. The Commonwealth's inference would certainly be within the jury's personal experience. Furthermore, a prosecutor may use facts in evidence and legitimate inferences drawn therefrom. *Commonwealth v. Fromal,* 392 Pa. Super. 100, 572 A.2d 711 (1990); *Commonwealth v. Howard,* 375 Pa. Super. 43, 543 A.2d 1169 (1988), *alloc. denied,* 559 A.2d 35 (1989). We conclude that the assistant district attorney acted properly, and we will therefore refuse this assignment of error.

Defendant also argues that the assistant district attorney's characterization of the report by the DNA expert was improper. The expert had stated that the possibility of another person, besides defendant, having a similar DNA pattern was remote. In closing, the assistant district attorney described such a possibility as slim to none. After defense counsel's objection, the Commonwealth immediately and properly explained that "slim to none" was the assistant district attorney's characterization of the expert's opinion and stipulated that the expert used the terminology "remote." Clearly, the remark was neither significant nor prejudicial. Neither this characterization nor the theory discussed above warrant the imposition of a new trial.

Defendant next argues that the court should have instructed the jury that the identification testimony of the victim and her roommate should have been received with caution. The court's instructions were as follows:

"Identification testimony. Whether the testimony of an identification is generally believable, you must obviously consider if the opportunity to observe was sufficient to allow them to make an accurate identi-

fication, how the identification was arrived at, the circumstances which indicate whether or not the identification is accurate and whether or not the identification is supported by other evidence are all factors that you must consider in making a determination as to whether or not you will accept the testimony of a witness who identifies another person or another thing.''

There was no need for additional instruction. The victim positively identified defendant at the lineup and in the courtroom. Only at the preliminary hearing did the victim hesitate in identifying defendant. The victim explained that the hearing was soon after the rape, and she was too afraid to look at defendant for more than a few seconds. The victim's roommate positively identified the defendant at the lineup and at trial. Defendant argues that such identification was unreliable since the encounter with the attacker lasted only a few seconds. The court, in its charge, covered the issue of sufficient opportunity for identification. We conclude that the identification charge was sufficient and no further cautionary instruction was required: *Commonwealth v. Harris,* 326 Pa. Super. 64, 473 A.2d 610 (1984).

Defendant's last assignment of error alleges that the court's instructions to the jury concerning unresolved differences in testimony was improper. Defendant contends that the court instructed the jury that they had an obligation to resolve differences or inconsistencies in the testimony. The court's instructions were adequate, sufficient and clear. The court explained the concept of reasonable doubt and apprised the jury of their function. When evaluating jury instructions, the charge must be read as a whole to determine whether it is prejudicial. *Commonwealth v. Prosdocimo,* 525 Pa. 147, 578 A.2d 1273 (1990). We cannot conclude that defendant was

prejudiced by this charge nor will the court assign an error on an isolated excerpt of the charge on which defendant bases his objection. *Commonwealth v. Smallhoover*, 389 Pa. Super. 575, 567 A.2d 1055, *alloc. denied*, 578 A.2d 413 (1989); *Commonwealth v. Nelson*, 389 Pa. Super. 417, 567 A.2d 673 (1989).

The charge, read as a whole, did not indicate that the jury must resolve the differences. Furthermore, the court sufficiently clarified the resolution of differences in testimony at the request of defense counsel. The charge reads as follows:

"All of you in making an important decision in your own affairs carefully consider all of the facts known to you so that the decision you make will be an appropriate decision. So carefully consider in attempting to resolve the differences in testimony is not a reasonable doubt, nor is the fact that there are differences in the testimony that need to be resolved sufficient to raise a reasonable doubt, but if after you have considered all of the evidence on both sides, either because of the failure of the Commonwealth to produce sufficient evidence or because you don't believe some of the evidence, or because considering all of the evidence you would still pause and hesitate as to a decision making as to the guilt or innocence of the defendant, or the elements of the offense that need to be established, then you have a reasonable doubt, and should find the defendant not guilty.

"Just so that we are clear, but with regard to the conflicts of testimony, if you can't resolve conflicts in testimony, then obviously you can't resolve the case, and it raises a reasonable doubt. If you can resolve the conflicts, then you should do so if you can, and if you can do so, without a reasonable doubt, you should do it."

The charge, read as a whole, was adequate and sufficient. We will therefore dismiss this last assignment of error.

Accordingly, we enter the following

## ORDER

And now, May 14, 1991, the post-trial motions of defendant, Larry L. Greer, are hereby refused and denied.

The probation department is directed to prepare a presentence investigation report, and defendant is directed to appear before the court for sentencing on June 10, 1991, at 9:30 a.m. in courtroom no. 2 of the York County Courthouse, York, Pennsylvania.