**Commonwealth v. Enck**

*Megan Ryland-Tanner,* for Commonwealth.
*Robert B. Keys Jr.,* for defendant.

CHARLES, *J.,* August 10, 2010—The question before us is whether the defendant, John Enck, was subject to "custodial interrogation" while police were executing a search warrant at his home. Although factors exist that support both sides' positions on this issue, our conclusion based upon the totality of circumstances presented is that the defendant was subjected to a custodial interrogation without first being advised of his so-called "*Miranda* warnings.*"* Accordingly, and for reasons that we will articulate in more detail below, we will be granting the defendant's motion to suppress the statements he uttered to police.

## I. FACTS

On June 15, 2009, a team of police led by Lebanon County Detective Jason Cleck arrived at the defendant's residence in order to execute a search warrant. The warrant was issued by a magisterial district judge because the Commonwealth possessed probable cause to believe that the defendant possessed child pornography on his computer. The primary focus of Detective Cleck and his team was to secure any computers that were located inside the defendant's residence.

Upon arrival, the defendant's dogs created some commotion. The defendant appeared reluctant to secure his dogs. As a result, Detective Steven Bord said to the defendant: "Restrain your dogs so I do not have to shoot

them." After additional discussion, the defendant did place his dogs in the backyard and the police entered the residence.

Detective Cleck explained to the defendant that he possessed a search warrant because he suspected that child pornography would be located on the defendant's computer. Detective Dominic Visconte advised the defendant that he was not under arrest and that he could leave his home if he chose.

The defendant did not wish to leave his home. Therefore, police told the defendant that he would have to stay in one location and that he would not be able to leave that location while police were present. The defendant chose to sit in his living room. A police officer was assigned to stand right next to the defendant in order to make sure that he did not move around his house while police were conducting their search. The defendant was told by police that this officer was present "to keep an eye on him."

While police were searching the defendant's home, they located several computers. When they did so, Detective Cleck would ask the defendant who used each computer. In addition, the defendant was asked about his familiarity with terms that are frquently used by those who view and exchange child pornography on the computer. The defendant responded to each of Detective Cleck's questions. At one point, the defendant asked Detective Cleck: "What charges am I facing?"

Child pornography charges were eventually filed against the defendant on August 27, 2009. The pretrial motion sought to suppress all statements made by the

defendant as a result of Detective Cleck's questioning. We conducted a pretrial hearing on June 30, 2010. Thereafter, we asked for briefs from the parties. These briefs have been received. The issue raised by the defendant is now before us for disposition.

## DISCUSSION

Everyone involved in this case agrees that the defendant was never advised of his so-called "*Miranda* rights" prior to being questioned by Detective Cleck. Under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny, statements made by a suspect while subject to "custodial interrogation" are inadmissible unless the suspect is first read his *Miranda* rights. The parties to this dispute vigorously contest whether the defendant was subject to "custodial interrogation." Our decision today will hinge upon whether the defendant was or was not "in custody" when he answered Detective Cleck's questions.

Police officers are required to provide so-called "*Miranda* warnings" to any suspect who is subjected to a custodial interrogation. *Commonwealth v. McAliley,* 919 A.2d 272 (Pa. Super. 2007). When an individual is placed under arrest, he is always considered to be "in custody." *Commonwealth v. Williams,* 941 A.2d 14 (Pa. Super. 2008). However, "custody" for purposes of *Miranda* transcends formal arrest. A suspect may be considered "in custody" whenever his/her freedom is deprived in any significant way. *Commonwealth v. Elchinger,* 591 Pa. 1, 915 A.2d 1122 (2007).

"Custodial interrogation has been defined as 'questioning initiated by law enforcement officers after a person

has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way.'" *Commonwealth v. Mannion,* 725 A.2d 196, 200 (Pa. Super. 1999), quoting in part *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966).

" 'Interrogation' is police conduct 'calculated to, expected to, or likely to evoke an admission.'" *Mannion, supra* at p. 200, quoting *Commonwealth v. Simala,* 434 Pa. 219, 226, 252 A.2d 575, 578 (1969).

The analysis of whether a defendant is "in custody" is fact-specific, and must be made on a case-by-case basis. *Commonwealth v. DeJesus,* 567 Pa. 415, 787 A.2d 394 (2001); *Commonwealth v. Ellis,* 379 Pa. Super. 337, 549 A.2d 1323 (1988). In determining whether an individual was "in custody," our inquiry should focus upon whether the suspect "reasonably believes" that his or her freedom of movement has been restrained in any significant way. *Commonwealth v. Eichinger, supra.* The test for custodial interrogation does not depend upon the subjective intent of the law enforcement investigator, but whether upon what the suspect reasonably believes about his freedom of movement. *Commonwealth v. Sepulveda,* 579 Pa. 217, 855 A.2d 753 (2004).

Factors that we must consider in assessing whether a defendant is "in custody" include the following:

(1) Whether the defendant was the focus of an investigation. *Commonwealth v. Jones,* 758 A.2d 228 (Pa. Super. 2000).

(2) Whether the defendant's freedom of action or movement was restricted in any way. *Commonwealth v. Sepulveda, supra.*

(3) Whether the defendant was advised that he or she was not under arrest. *Commonwealth v. DiStefano,* 782 A.2d 574 (Pa. Super. 2001).

(4) The length of the detention. *Commonwealth v. DiStefano, supra.*

(5) The location of the detention and whether the defendant was transported to that location by police. *Commonwealth v. Turner,* 772 A.2d 970 (Pa. Super. 2001).

(6) Whether the police showed, threatened or used physical force. *Commonwealth v. DiStefano, supra.*

The case of *Commonwealth v. Brodo,* 262 Pa. Super. 375, 396 A.2d 802 (1979) involved questions posed by police to a defendant while he was inside his home. The defendant claimed that he was subject to a custodial interrogation. The court recognized the general proposition that "a suspect actually may be in custody even if the police have not taken him to a police station or formally arrested him." *Id.* at 805. Nonetheless, the court noted that police had asked "only two short questions." Because the interrogation was "short and occurred in appellant's own home," the court determined that the defendant was not subject to a custodial interrogation.

On the other hand, the court in *Commonwealth v. Zogby,* 455 Pa. Super. 621, 689 A.2d 280 (1997), determined an in-home questioning to be "custodial." In *Zogby,* police were investigating a hit-and-run accident. Police officers were admitted into the defendant's house by a roommate. They awakened the defendant from a sound sleep and told him to come outside in order to answer questions about the side of his car. The court

found that the police conduct in *Zogby* was sufficiently coercive that it could be classified "custodial interrogation." [1]

In this case, the Commonwealth argues that no "custodial interrogation" occurred because the defendant was told he was not under arrest and was free to leave his house. We acknowledge that these are both factors that weigh in favor of the Commonwealth's position. However, as far as we can see, these are the only factors that weigh in favor of the Commonwealth.

Many factors exist that weigh in favor of the defendant. Some of those factors include the following:

(1) The defendant was told that he would have to sit in one place and not move during the police search.

(2) An officer was assigned to stand next to the defendant in order to "keep an eye on him." The defendant could have reasonably believed that the officer was present to make sure that he would comply with police instruction not to move.

(3) Police advised the defendant early in the encounter that they would shoot his dogs unless the defendant secured them.

(4) The defendant was told that police were present at his house to execute a warrant that related to possession

---

1. On the other hand, mere suspicion by police does not automatically create a custodial interrogation. In *Commonwealth v. Busch,* 713 A.2d 97 (Pa. Super. 1998), the court stated "that it 'was the compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicion at the time the questioning was conducted'" which triggered the requirement for *Miranda. Id.* at 99.

of child pornography. By its very nature, a search warrant is a coercive device.

(5) The nature of Detective Cleck's questions were anything but innocuous. Detective Cleck asked critical investigative questions such as "who used this computer" and "what does this particular phrase mean" in a clear effort to obtain inculpatory information. By its very nature, accusatory questioning can be reasonably viewed as coercive.

(6) Police stayed inside the defendant's home for 45 to 50 minutes. This is a relatively lengthy encounter, especially for an individual who was required to sit still in one place while being guarded by an armed police officer.

(7) Detective Cleck's questioning occurred throughout the time that police were inside the defendant's home. Detective Cleck never reminded the defendant that he was free to leave immediately prior to questioning him.

Both sides rely upon the fact that the questioning by Detective Cleck occurred inside the defendant's home. The Commonwealth points out that questioning inside a person's home is generally less coercive than questioning inside a police station or police cruiser. Defendant argues that the police essentially "took over" his house and denied him access to most of it. He argues that this conduct is in many ways more coercive than situations where defendants voluntarily consent to questioning at police headquarters.

We understand the arguments of both parties with respect to the location of the questioning. Both positions

have merit, In our opinion, the location of police questioning—at the defendant's home—is not a factor that we will weigh for or against either party,

As we consider all of the above factors, there is one additional piece of evidence that we find particularly illuminating. During his direct examination, Detective Cleck outlined portions of his conversations with the defendant. Detective Cleck remembered that the defendant asked him: "What charges am I facing?" This question was illuminating, because it served as a mirror into the defendant's state of mind; the defendant believed that he had been or imminently would be "under arrest."

As we examine the totality of circumstances presented, we conclude that the defendant subjectively believed that his liberty had been "substantially affected" and that his subjective belief was objectively reasonable. Although Detective Cleck did advise the defendant that he was "free to leave", Detective Cleck did not reinforce that statement by having the defendant sign a written acknowledgement to that effect. Moreover, every single action taken by police after Detective Cleck's "you are free to go" statement directly contradicted the notion that the defendant was indeed free to do as he pleased. Based upon the totality of cirumstances, we conclude that the defendant was subjected to a "custodial interrogation." Because police did not advise the defendant of his *Miranda* warnings, statements made by the defendant during the custodial interrogation must be and will be supressed. An order to effectuate this decision will be entered this date.